488 A.2d 613

**Roslyn S. BRADERMAN**

v.

**Jay R. BRADERMAN.**

Superior Court of Pennsylvania.

Argued Jan. 12, 1984.

Filed Feb. 8, 1985.

John F. Lyons, Harrisburg, for appellant.

Arthur L. Goldberg, Harrisburg, for appellee.

Before WICKERSHAM, DEL SOLE and MONTEMURO, JJ.

MONTEMURO, Judge:

These cross-appeals arise from an order of the Dauphin County Court of Common Pleas in a divorce proceeding concerning the equitable distribution of marital property, alimony, and counsel fees. Roslyn S. Braderman, is the appellant in appeal No. 272 and Jay R. Braderman is the appellant in appeal No. 273. In order to avoid the confusion which the terms "appellant" and "appellee" would cause in dealing with these cross-appeals, the term "plaintiff-wife" will be used throughout this opinion to describe Roslyn S. Braderman and Jay R. Braderman will be designed as "defendant-husband".

Roslyn and Jay Braderman were married on April 7, 1963 and two children were born of this marriage. Since the parties' separation in June, 1980, the children, Randi, age five, and Sari, age three, have resided with their mother. Roslyn Braderman, age thirty-nine (39) works part-time as a medical secretary. Jay Braderman, age forty-three (43), is a practicing attorney earning a gross income of approximately $60,000.00 per year. Until 1977, he was employed by the Commonwealth of Pennsylvania and participated in the State Employees' Retirement System from which he now receives monthly benefits.

On July 29, 1981, plaintiff-wife instituted an action for divorce alleging indignities under 23 P.S. § 201(a)(6). She later amended her complaint alleging that the marriage was irretrievably broken under 23 P.S. § 201(c) and both parties filed affidavits of consent. On December 22, 1982, pursuant to defendant-husband's motion, the trial court entered an order granting a decree in divorce and bifurcating and preserving all other issues. The matter was then assigned to a special master who, after conducting hearings on May 18, 1982 and May 21, 1982, filed his report and recommendation. The master's report identified the retirement benefits as marital property and awarded the entire amount of the benefits to defendant-husband. The master then divided the other marital property, and awarded plaintiff-wife alimony in the amount of $150.00 per week for seven (7) years. The master, however, denied plaintiff-wife's request for counsel fees, finding that she would receive at least $20,000 per year from part-time employment, alimony, and child support.

Both parties filed numerous exceptions to the Master's report. Oral arguments on these exceptions were heard by the Honorable Warren G. Morgan who entered an order rejecting the master's inclusion of the retirement benefits as marital property,[1] and adopting the remainder of the

---

1. The court also rejected the master's determination regarding two (2) of plaintiff-wife's rings concluding that the insurance claim which

master's proposed property distribution. The trial court also found that the master's award of alimony was insufficient. After evaluating plaintiff-wife's income from part-time employment, child support, and investments, as well as her reasonable expenses, the court awarded her alimony in the amount of $190.00 per week for five (5) years. Furthermore, the court rejected the master's recommendation relating to insurance coverage for the plaintiff-wife, but adopted the master's recommendation that her request for counsel fees be denied. These cross-appeals followed.

On appeal, Roslyn S. Braderman, plaintiff-wife, presents two arguments for our consideration: First, she contends that the defendant-husband's state employee retirement benefits constitute marital property subject to equitable distribution. Second, she argues that the trial court erred in concluding that she was not entitled to an award of counsel fees. In his cross-appeal, Jay R. Braderman, defendant-husband, challenges the determination of the trial court concerning: (1) the property distribution scheme; (2) the alimony award; (3) the division of the stock portfolio; (4) the amount of his weekly net income; and (5) the plaintiff-wife's and defendant-husband's living expenses. We shall consider these issues *seriatim*.

■ Before addressing these contentions, we reiterate our scope of review. Awards of alimony, counsel fees, and property distribution are within the sound discretion of the trial court and this court will not reverse, nor interfere with the determination of the trial court unless there has been a clear abuse of discretion. *Ruth v. Ruth*, 316 Pa.Super. 282, 462 A.2d 1351 (1983). An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence.[2] As a result, under the abuse of discretion stan-

arose from the loss or theft of these two (2) rings constituted plaintiff-wife's separate property, since the rings were acquired by her as gifts.

2. An abuse of discretion has been defined as "... not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *Commonwealth ex rel.*

dard, we do not usurp the trial court's duty as fact finder; rather, we carefully scrutinize each of the guidelines to determine whether the lower court has abused its discretion. *Ruth, supra.* However, an abuse of discretion will be found by this court if the trial court failed to follow proper legal procedures or misapplied the law. *Banks v. Banks,* 275 Pa.Super. 439, 418 A.2d 1370 (1980). Considering this standard of review, we now address the claims presented.

■ Plaintiff-wife contends first that the state retirement benefits appellee receives as a result of his employment with the Commonwealth of Pennsylvania should be classified as marital property. The trial court reversed the master regarding the status of the benefits and concluded that the state retirement plan was actually an annuity, since an "annuitant has an interest only in the payments themselves and not in any principal fund or source from which they may be arrived [sic]." Since the trial judge viewed the retirement plan as purely income, its present value was not included in the marital property. We disagree with the trial court's interpretation and conclude that defendant-husband's state retirement benefits constitute marital property.

In many equitable distribution cases, an employee's retirement plan [3] represents one of the most valuable assets accumulated by the marital parties. Often, the marital home is the only other major asset. As a result, questions relating to whether these benefits should be classified as marital property subject to equitable distribution are vital to Pennsylvania's system of equitable distribution. Although the Pennsylvania Appellate Courts have not addressed this matter,[4] it has produced vast amounts of litiga-

*Levy v. Levy,* 240 Pa.Super. 168, 361 A.2d 781 (1976) (cited in *Commonwealth ex rel. Caswell v. Caswell,* 280 Pa. 359, 421 A.2d 762 (1980).

3. For purposes of this opinion, the terms "retirement plan" and "pension" are used interchangeably. The terms used to describe rights under a pension plan include "retirement benefits", "pension payments" and "deferred employee benefits".

4. In *King v. King,* 332 Pa.Super. 526, 481 A.2d 913 (1984), this court noted:

tion in other jurisdictions with varying results, depending on the type of benefits involved.

Pension or retirement benefits are characterized as vested or non-vested, contributory or non-contributory, and matured or unmatured. A critical question concerning these benefits deals with during what stage of the plan the marriage was terminated. A marriage can be terminated during the stage when benefits are non-vested, vested, unmatured or fully matured. Non-vested benefits are subject to a number of contingencies. These benefits have accrued, but are still subject to the condition that the employee continue his employment. They will be forfeited by discharge, voluntary termination or death. An employee's interest is vested if he is entitled to receive them at retirement age, regardless of whether he continues working for the employer. If the benefits have vested, but have not yet matured, the employee has a right to benefits in the future, often upon attainment of a designated age. However, the benefits subject to the least amount of contingencies have matured, meaning the employee is collecting payments from the plan or has met all the requirements for immediate payment. These matured benefits are subject only to the contingency that the employee survive to receive all the payments. Even if the employee terminates his employment, he has a present right to receive these benefits.

Although he does not raise the question as a separate issue, appellant does suggest in the body of his argument that perhaps his pension fund is not subject to equitable distribution. He cites our opinion in *Young v. Young*, [320] Pa.Super. [269], 467 A.2d 33 (1983). In that case, however, we did not say that a municipal pension was not marital property, but that it was not subject to attachment. As we said, 'Appellant must utilize other means, whether at law or in equity, to enforce such order.'

We believe it is clear that the pension is marital property subject to equitable distribution and agree with the decisions of other jurisdictions that have so found.

*King v. King, supra,* 332 Pa.Superior Ct. at 531 n. 2, 481 A.2d at 916 n. 2.

The vast majority of jurisdictions hold that vested, unmatured retirement benefits are marital property,[5] and the present trend rejects any distinction between these benefits on the basis of vesting, by including vested, as well as unvested rights, as marital property.[6] In the case *sub judice,* however, we deal with retirement benefits that have both vested and matured. During his marriage to plaintiff-wife, defendant-husband was employed by the Commonwealth of Pennsylvania and contributed to the State Employee Retirement System. When he terminated his employment in 1977, he withdrew his contributions to the retirement system amounting to approximately $15,000.00. Defendant-husband elected to withdraw his contribution in a lump sum payment. Under this option, no further lump sum payments are permitted. Defendant-husband, however, has met all the requirements under the plan and currently receives monthly payments in the amount of $99.43 from the State Employee's Retirement System. He has the right to receive these monthly payments for the rest of his life or the life of the surviving beneficiary which is currently plaintiff-wife.

■ After a study of these concepts, we begin our analysis by focusing on the definition of marital property in our

5. *See, e.g., Mienholz v. Mienholz,* 11 FAM.L.REP. (BNA) 1027 (November 20, 1984) (Ark.Sup.Ct. October 29, 1984). *Majauskas v. Majauskas,* 61 N.Y.2d 481, 474 N.Y.S.2d 699, 463 N.E.2d 15 (1984); *DiPietro v. DiPietro,* 193 N.J.Super. 533, 475 A.2d 82 (1984); *Hatcher v. Hatcher,* 129 Mich.App. 753, 343 N.W.2d 498 (1983); *Deering v. Deering,* 292 Md. 115, 437 A.2d 883 (1981); *Kikkert v. Kikkert,* 177 N.J. 471, 427 A.2d 76 (1981), *aff'd* 88 N.J. 4, 438 A.2d 317 (1981), *Bloomer v. Bloomer,* 84 Wis.2d 124, 267 N.W.2d 235 (1978).

 *See generally* Annot., 94 A.L.R.3d 176 (1979) (discusses the issue of whether a spouse's pension or retirement benefits are subject to award or division by a court in settlement of property rights between spouses).

6. *See, e.g., Lookingbill v. Lookingbill,* 301 Md. 283, 483 A.2d 1 (1984); *Damiano v. Damiano,* 94 App.Div.2d 132, 463 N.Y.S.2d 477 (1983); *Janssen v. Janssen,* 331 N.W.2d 752 (Minn.1983); *Robert C.S. v. Barbara J.S.,* 434 A.2d 383 (Del.Super.1981); *Woodward v. Woodward,* 656 P.2d 431 (Utah 1982); *Kikkert v. Kikkert,* 177 N.J. 471, 427 A.2d 76 (1981), *aff'd* 88 N.J. 4, 438 A.2d 317 (1981) (*quoting Stern v. Stern,* 66 N.J. 340, 331 A.2d 257 (1975)), and *In Re Marriage of Brown,* 15 Cal.3d 838, 544 P.2d 561, 126 Cal.Rptr. 633 (1976).

Divorce Code of 1980. Section 401(e) defines marital property as "all property acquired by either party during the marriage". The Code presumes that all property, whether real or personal, acquired by either party during the marriage is marital property. 23 P.S. § 401(e). This presumption, however, is overcome if the property was acquired by one of the methods which are excepted from the marital property definition. These exceptions include:

(1) Property acquired in exchange for property acquired prior to the marriage except for the increase in value during the marriage.

Furthermore, the inclusion of matured retirement benefits as marital property fully comports with the policies and goals of the Divorce Code. Section 102 provides that the goal of the Code is to effectively deal with the realities of marriage and to "[E]ffectuate economic justice between the parties who are divorced or separated and grant or withhold alimony according to the actual need and ability to pay of the the [sic] parties and insure a fair and just determination and settlement of their property rights." 23 P.S. § 102(a)(6). Through the joint efforts of both parties to a marriage, an employee spouse is able to obtain additional compensation in the form of employee retirement benefits. The contribution of the non-employee spouse to the household cannot be ignored.

■ In the instant case, plaintiff-wife made significant contributions to the marriage as a homemaker, as well as through employment outside the home. To deny her a share of defendant-husband's retirement benefits would deny her what she helped to achieve during the marriage. Each spouse has a reasonable expectation of enjoying the monies received from an employee retirement fund. In order to "effectuate economic justice between the parties", equity demands that both parties share in this asset acquired during the marriage. Accordingly, we conclude that defendant-husband's state retirement benefits are marital property subject to equitable distribution, and that the trial

court abused its discretion by failing to include these benefits as marital property.

(2) Property excluded by valid agreement of the parties entered into before, during or after the marriage.

(3) Property acquired by gift, bequest, devise or descent except for the increase in value during the marriage.

(4) Property acquired after separation until the date of divorce, provided however, if the parties separate and reconcile, all property acquired subsequent to the final separation until divorce.

(5) Property which a party has sold, granted, conveyed or otherwise disposed of in good faith and for value prior to the time proceedings for the divorce are commenced.

(6) Veterans' benefits exempt from attachment, levy or seizure pursuant to the act of September 2, 1958, Public Law 85-857, 72 Statute 1229, as amended, except for those benefits received by a veteran where such veteran has waived a portion of his military retirement pay in order to receive Veteran's Compensation.

(7) Property to the extent to which such property has been mortgaged or otherwise encumbered in good faith for value, prior to the time proceedings for divorce are commenced. (Footnote omitted)

23 P.S. § 401(e). None of these section 401(e) exceptions are applicable to retirement benefits. If the presumption of marital property is not overcome, the property is marital property. Therefore, due to the operation of the presumption, since retirement benefits are not excepted by one of the above categories, they must be included as marital property.

■ The critical question under the Divorce Code then becomes whether the benefits were "acquired by either party during the marriage". 23 P.S. § 401(e). An interest in an employee retirement plan is a form of additional compensation. The employee benefits are a wage substitute which are earned and bargained for by the employee. If these benefits result from employment during the mar-

riage, they are marital property since the benefits are received in lieu of higher compensation which would have enhanced the marital assets or the marital standard of living. Therefore, it must be determined if and how much of the benefits were earned while the parties were married. Only that portion of the pension attributable to the period commencing with the marriage and ending on the date of separation is marital property within the meaning of the Divorce Code. *King v. King*, 332 Pa.Super. 526, 481 A.2d 913 (1984).

■ Plaintiff-wife and defendant-husband were married when defendant-husband was employed by the Commonwealth, as well as at the time he terminated this employment and his interest matured. These benefits constitute deferred compensation for services defendant-husband performed during the marriage and therefore, he acquired his interest in these benefits while married to plaintiff-wife.

The lower court stated that the defendant-husband only had an interest in the monthly payments, not in the principal fund. We disagree. Defendant-husband's interest in his retirement benefits has not only vested, but has matured. He worked for and earned the right to these payments, and he, therefore, has an interest in the principal sum, not only the monthly payments he receives from that principal.

This holding is in agreement with a recent case by this court dealing with a related issue, as well as decisions from numerous trial courts in Pennsylvania.[7] This court recently reviewed the valuation of a pension for equitable distribution purposes. *King, supra*. Although not an issue raised by the parties, the court in a footnote opined that a pension is marital property. The court stated:

> We believe it is clear that the pension is marital property subject to equitable distribution and agree with the

7. *See, e.g., Nogan v. Nogan*, No. —— (Allegheny Ct.C.P., Sept. 24, 1984); *Salac v. Salac*, No. —— (Allegheny Ct.C.P., March 21, 1984); *Kalinoski v. Kalinoski*, No. 80–530 (Butler Ct.C.P., Dec. 1, 1982); and *Gorr v. Gorr*, No. 114 Oct. Term (Allegheny Ct.C.P.1980).

decisions of other jurisdictions that have so found. *See e.g. In re Marriage of Fairchild,* 110 Ill.App.3d 470, 66 Ill.Dec. 131, 442 N.E.2d 557 (1982) *Janssen v. Janssen,* Minn., 331 N.W.2d 752 (1973); *Jerry L.C. v. Lucille H.C.,* Del., 448 A.2d 223 (1982).

Moreover, the Divorce Code, 23 P.S. § 401(e) defines marital property as 'all property acquired by either party during the marriage.' None of the exclusions to the definition applies to pensions.

*King, supra,* 332 Pa.Superior Ct. at 531 n. 2, 481 A.2d at 916, n. 2. Furthermore, retirement benefits have been classified as marital property in our sister states which have similar property distribution statutes.[8]

Having determined that the retirement benefits are marital property subject to equitable distribution, the complex task of valuing and dividing this asset must be addressed. Although Pennsylvania courts have never addressed this task, two main methods of distribution have been established by our sister courts.

One method, the immediate offset method, divides the benefits at the time the equitable distribution order is entered by assigning a present value to them. For a discussion of the determination of present value see Troyan, *Pension Evaluation and Equitable Distribution,* 10 FAM. L.REP. (BNA) 3001 (1983). As we recommended in *King, supra,* the retirement plan should be valued as of the date of the hearing. After determining the present value of the

**8.** *See, e.g.,* New Jersey—*Kikkert v. Kikkert,* 177 N.J. 441, 427 A.2d 76 (1981) ("The court may make ... [an] award or awards to the parties in addition to alimony and maintenance, to effectuate an equitable distribution of the property, real and personal, which was legally and beneficially acquired by them or either of them during the marriage." *N.J.Stat.Ann.* 2A:34–23 (West 1984)) and Delaware—*Robert C.S. v. Barbara J.S.,* 434 A.2d 383 (Del.Super.1981) ("In a proceeding for divorce or annulment, the court shall, upon request of either party, equitably distribute and assign marital property between parties without regard to marital misconduct, in such proportions as the court deems just." *Del.Code Ann.* tit. 13, § 1513(a) (1981)).

*See also* Comment, *Vested But Unmatured Pensions as Marital Property: Inherent Valuations, Allocation and Distribution Problems in Equitable Distributions,* 14 RUTGERS L.J. 175 (1982).

benefits, it is necessary to calculate the portion of the present value which was earned during the marriage. As we stated above, only those benefits attributable to the period commencing with the marriage and ending on the date of separation are marital property. *King, supra.* This present value must then be multiplied by the "coverture" fraction to reach the present value of the entitlement which was acquired during the marriage. The "coverture" fraction represents that portion of the value of the benefits attributable to the marriage. The numerator of the fraction reflects the total period of time the employee spouse participated in the plan during the marriage, and the denominator is the total period the employee participated in the benefits program. *See* Skoloff, *How to Evaluate and Distribute Employee Benefits in Divorce, NAT'L. L.J.* 25 (February 13, 1984). Next, the court must determine how the sum available for equitable distribution should be apportioned between the spouses according to the provisions of the Divorce Code. After determining the non-employee spouse's interest in the benefits, the court awards these benefits to the employee spouse and offsets this award by distributing other marital property or by ordering payment to the non-employee spouse.

▮ The second method is labeled the deferred distribution or reserved jurisdiction method, since the court retains jurisdiction and apportions the benefits when they enter pay status or mature. Under this method, present value figures are not used. Rather, the "coverture" fraction is applied to the benefits when they enter pay status since there are too many variables projected into the future. *King, supra.* *(citing* Troyan, *Pension Evaluation and Equitable Distribution,* 10 FAM.L.REP. (BNA) 3001 (1983)).

The immediate offset method has the advantage of avoiding further entanglement between the parties. Problems with continuing court supervision and enforcement are also avoided. This method's greatest virtue, however, is that it effectuates a final and immediate settlement of the distribution of the retirement benefits. In contrast, the deferred

distribution method equally divides the risk of forfeiture before maturity among the parties, but also prolongs the strife and hostility between the parties by extending the time for a final resolution of the parties' assets. Although an immediate offset is preferred, *See* Troyan, *supra,* this method is impractical where the parties do not possess enough assets to offset the pension award. When the value of the employee-spouse's pension far exceeds the value of the other marital property, the deferred distribution method must be used.

We do not attempt in this case to establish a distribution scheme to be used in every case. Rather, the trial courts of this Commonwealth must balance the advantages and disadvantages of each alternative method as applied to the facts of each particular case to determine which method best effectuates a fair and equitable distribution. In the instant case, however, the defendant-husband's benefits have matured and he is currently receiving monthly payments. As a result, on remand, the trial court shall use the immediate offset method.

Finally, defendant-husband suggests that he will be unjustly burdened if the pension is designated as a marital asset subject to equitable distribution and also used to calculate the alimony award to plaintiff-wife. This argument ignores the provisions of the Divorce Code providing that in determining the alimony award, the court must consider numerous factors including the sources of income and the property of *both* parties. 23 P.S. § 501(b)(3). In determining the husband's ability to pay support, the court must consider his earning power and the nature and extent of his property. *Commonwealth ex rel. Buehler v. Buehler,* 288 Pa.Super. 303, 431 A.2d 1059 (1981). Also, in determining whether plaintiff-wife lacks sufficient property to provide for her reasonable needs, the court must consider any property distributed to the wife pursuant to the equitable distribution award. 23 P.S. § 501(a)(1). *Geyer v. Geyer,* 310 Pa.Super. 456, 456 A.2d 1025 (1983). As a result, defendant-husband will not be unjustly burdened

since his property, as well as plaintiff-wife's property must be considered in calculating an alimony award.

Since we have concluded that defendant-husband's state retirement benefits constitute marital property, we reverse the equitable distribution order of the trial court and on remand direct the court to include defendant-husband's retirement benefits as marital property and to equitably distribute the benefits in accordance with the procedures established in this opinion.

■■■ The second issue on appeal concerns whether the trial court erred in failing to make an award of counsel fees to plaintiff-wife. The plaintiff-wife contends that the court abused its discretion by refusing her request for attorney fees. The trial court adopted the master's recommendation that plaintiff-wife's request for counsel fees and expenses be denied because she receives at least $22,000 per year from part-time employment, alimony and child support. In determining that she was not entitled to attorney fees, however, the court also considered that she was awarded in excess of $40,000.00, plus the house and other tangible personalty from the distribution of the marital property. Since we have determined that the equitable distribution order upon which the trial court relied in awarding counsel fees was in error, we also reverse and remand the order regarding counsel fees and expenses. The court may or may not wish to change its determination, but on remand it shall reconsider plaintiff-wife's entitlement to counsel fees after it properly distributes the marital property.

■■■ We next consider defendant-husband's cross-appeal. First, he argues that the lower court erred in determining that the parties living expenses were essentially equal. Specifically, he complains that, in order to evaluate their living expenses, the court should have considered the additional costs he would incur in purchasing a home and visiting his two daughters, as well as the fact that plaintiff-wife's mortgage payments would be ending soon. We find this argument meritless.

The record reveals that the lower court did not adopt the finding of the master that the needs of the parties were equal. Rather, the court examined the annual expenses of the parties and found that defendant-husband's needs were "presently approximately $3,000 to $4,000" more than plaintiff-wife's. The testimony concerning expenses was carefully evaluated by the court. The court labeled some of plaintiff-wife's expenses as unjustified, thus lowering the amount of her claimed expenses. The court deleted from her yearly living expense statement expenses for "Yeshiva & Hebrew High School ($1399.94), houshold help ($1040), camp for children ($999.96), lawn care/snow removal ($520)." In arriving at its own reasonable yearly expenses for the plaintiff-wife, the court also considered the fact that the mortgage on the marital home would soon be paid.

Furthermore, in evaluating defendant-husband's expenses, the court noted his desire to purchase a new home. However, since he had not yet purchased a new home, his testimony regarding possible mortgage payments was regarded as "extremely vague." Finally, the court dismissed defendant-husband's argument that the court failed to consider his visitation costs including the need to purchase a new home with sufficient bedroom space for his daughters when they visit. The court noted that the testimony revealed that one daughter on only one occasion ever stayed at her father's home overnight. Since the court considered the facts argued by defendant-husband and arrived at its own expense figures for the parties, we find no merit to this contention.

■ The next contention raised in defendant-husband's cross-appeal challenges the court's projection of his weekly net income. He claims that the court erroneously adopted the master's figure of $788.00 per week, instead of $759.00 per week. The defendant-husband does not offer any figures concerning how he arrived at this amount. The mas-

ter, however, also reached a similar figure of $760.00 per week for his weekly net salary.[9] The master then properly added to that amount $5.00 for dividend income and $23.00 for the state pension to reach a total of $788.00. Therefore, we find no error in the trial court's calculation of defendant-husband's weekly net income.

Defendant-husband also argues in his cross-appeal that the trial court abused its discretion in framing its award of alimony to plaintiff-wife. The trial court granted plaintiff-wife alimony in the amount of $190.00 per week for a period of five (5) years. Defendant-husband complains that the amount, as well as the duration of his award is unreasonable under the standards set forth in the Divorce Code.

 In determining the amount of alimony the court properly relied, *inter alia,* on the property distributed. to both parties under the equitable distribution scheme. However, since we have determined that the court's order of equitable distribution was in error, as discussed above, we also reverse and remand the alimony order. The court may or may not decide to change its award, but on remand the court shall reconsider the alimony award after it distributes the marital property.

Accordingly, the orders of the trial court regarding equitable distribution, alimony, and counsel fees are reversed and the case remanded for proceedings consistent with this

---

9. The master used the following calculations to determine defendant-husband's net income:

| | |
|---|---|
| Gross pay per week (including year end hold back distribution) | $ 996.00 |
| Federal W/H | −143.00 |
| FICA | −61.00 |
| State W/H | −22.00 |
| Local W/H | −10.00 |
| Net Salary | 760.00 |
| Dividends | +5.00 |
| Pension | +23.00 |
| Weekly Total Net Income | $ 788.00 |

Master's Report at 29.

opinion.[10] On remand, the court is directed to include the retirement benefits as marital property and to determine an equitable distribution of the marital property and plaintiff-wife's entitlement to alimony and counsel fees. Jurisdiction is not retained by this court.

Affirmed in part and reversed in part. This case is remanded for proceedings consistent with this opinion. Jurisdiction is relinquished.

10. Since we have remanded to the trial court for reconsideration of its equitable distribution award in light of our decision concerning the retirement benefits, we need not reach defendant-husband's two remaining claims of whether the trial court erred in: (1) awarding him only sixty percent (60%) of the stock portfolio and plaintiff-wife forty percent (40%); and (2) awarding plaintiff-wife sixty-two percent (62%) of the marital property and only thirty-eight percent (38%) to defendant-husband.