554 A.2d 89

**Patsy D. HUNSINGER**

v.

**James H. HUNSINGER, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 21, 1988.

Filed Feb. 8, 1989.

454

Thomas E. Leipold, Bloomsburg, for appellant.

Thomas A. James, Jr., Bloomsburg, for appellee.

Before BROSKY, MONTGOMERY and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from the lower court's final decree ordering the parties' divorce and approving the recommendations and report of the master. Appellant contends that the trial court abused its discretion in (1) concluding that appellee was entitled to a divorce on the ground of indigni-

ties; (2) concluding that a 60%/40% distribution in favor of appellee was equitable under the circumstances; (3) refusing him certain credits or deductions from the value of marital property in his possession in calculating the total value of marital property subject to equitable distribution; and (4) awarding appellee $1,000 towards attorney's fees. For the reasons that follow, we affirm the order of the trial court.

The parties in this action were married on July 6, 1968, initially separated in July of 1985, attempted a reconciliation in 1986, and ultimately separated in August of 1987. On September 12, 1985, appellee initiated a divorce action by filing a complaint alleging indignities and the irretrievable breakdown of the marriage. The court appointed a special master to preside over the divorce and distribution of property. Following the parties' attempt at reconciliation, a hearing was held before the special master on October 8, 1987. On January 18, 1988, the master filed a report and recommendation with the court. Appellant then filed exceptions to the master's report. On June 28, 1988, the lower court issued an Opinion and Order granting one of appellant's exceptions regarding the application of the equitable distribution percentages and remanded the issue to the master to determine the specific form of the award to be made to appellant. The court denied all of appellant's other exceptions. A final decree in divorce was thereby entered. This timely appeal followed.

■ Appellant initially contends that the trial court abused its discretion in concluding that appellee was entitled to a divorce on the ground of indignities. Specifically, appellant alleges that appellee failed to prove herself to be an innocent and injured spouse pursuant to section 201(a)(6) of the Divorce Code.[1] Our standard of review is well-settled.

---

1. 23 Pa.S.A. § 201 reads in relevant part:
   (a) It shall be lawful for the court to grant a divorce to the innocent and injured spouse whenever it shall be judged that the other spouse shall have:

[It] is our duty, on appeal, to make an independent study of the record and to determine whether a legal cause of action for divorce exists. Moreover, while the master's findings of fact and recommendation that a divorce be granted are only advisory, where the issue is one of credibility and the master is the one who heard and observed the witness, his findings should be given the fullest consideration.

*Rorabaugh v. Rorabaugh*, 302 Pa.Super. 1, 4, 448 A.2d 64, 66 (1982) (citations omitted). With specific regard to divorce based on indignities, we note that "no general rule can be formulated as to what constitutes indignities in a particular case; such matters depend upon all the circumstances of the particular case ..." *Brown v. Brown*, 288 Pa.Super. 354, 356–57, 431 A.2d 1085, 1086 (1981). Although there is no strict test that applies in determining whether indignities are present, the Supreme Court has suggested a framework of conduct: " 'Indignities may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement.' " *McKrell v. McKrell*, 352 Pa. 173, 180, 42 A.2d 609, 612 (1945) (construing prior divorce code) (quoting *Evans v. Evans*, 152 Pa.Super. 257, 262, 31 A.2d 590, 592 (1943)). The *McKrell* court further stated that indignities "must consist of a course of conduct or continued treatment which renders the condition of the innocent party intolerable and his or her life burdensome ... a course of conduct as is humiliating, degrading and inconsistent with the position and relation as a spouse...." *Id.* (citations omitted). Furthermore, the plaintiff must prove that he or she is the innocent or injured spouse in order for indignities to be the basis for divorce. *Rorabaugh v. Rorabaugh, supra* 302 Pa.Super. at 4, 448 A.2d at 66.

\* \* \* \* \* \*

(6) Offered such indignities to the innocent and injured spouse as to render his or her condition intolerable and life burdensome. *Id.* at § 201(a)(6).

Keeping these principles in mind, we turn to the record. The master found that:

[Appellee] testified that the problems started about 5 years ago. [Appellant] started going out to parties, with the time of his return getting later and later. It did not take much to get [appellant] drunk and he got nasty when he got drunk, over time this situation got worse. [Appellee] also testified that he degraded her in front of others, found fault with everything she did, would start arguments, would go out and not tell her when he was coming home. [Appellee] testified she felt unwanted, "in the pits," very low emotionally. While a lot of the testimony comes from the separation period, [appellee] did find a note that was dated before the first separation in reference to a girl friend. [Appellant] did testify to [appellee's] frigidness in bed, and a difficult child, the Master does not find these grounds for divorce. [Appellant] also testified to some physical abuse from [appellee], i.e. slapping and throwing objects; however, [appellee] claimed self defense. With all this testimony the master does find that [appellant] offered such indignities to [appellee], an innocent and injured spouse, as to render her condition intolerable and life burdensome.

Master's Report, R.R. at 16–17. These findings are supported by the testimony before the master. After carefully reviewing the entire record before us, we cannot conclude that the trial court erred in finding that the master was correct in characterizing appellee as an innocent and injured spouse and granting the divorce on the basis of indignities. Appellant's excessive drinking and continuous unexplained absences from the home late at night, together with his abusive treatment of appellee, was sufficient to make out a case for divorce based on indignities. *Compare Vajda v. Vajda*, 337 Pa.Super. 573, 487 A.2d 409 (1985). Although appellant attempted to show that appellee was not an "innocent and injured" spouse by citing her testimony on cross-examination as to her physical altercations with appellant, the master found her physical attacks to be in the nature of self-defense. *See Dukman v. Dukman*, 278 Pa.Super. 530,

420 A.2d 667 (1980). The master, as fact finder, had the opportunity to observe the demeanor of the witnesses and found appellee's testimony to be credible. Because we cannot find that he abused his discretion on this record, we will not disturb his findings. *See Rorabaugh v. Rorabaugh, supra.*

Appellant next contends that the trial court abused its discretion in concluding that a 60%/40% distribution of marital property in favor of appellee was equitable under the circumstances. The equitable distribution of marital property is within the sound discretion of the trial court and its decision will not be disturbed on appeal absent an abuse of discretion. *Johnson v. Johnson,* 365 Pa.Super. 409, 411, 529 A.2d 1123, 1124 (1987); *Barnhart v. Barnhart,* 343 Pa.Super. 234, 237, 494 A.2d 443, 444 (1985); *Semasek v. Semasek,* 331 Pa.Super. 1, 6, 479 A.2d 1047, 1050 (1984); *Kleinfelter v. Kleinfelter,* 317 Pa.Super. 282, 283, 463 A.2d 1196, 1197 (1983). Under the abuse of discretion standard, we are not to usurp the trial court's duty as the finder of fact. *Ruth v. Ruth,* 316 Pa.Super. 282, 287, 462 A.2d 1351, 1353 (1983).

An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence.... However, an abuse of discretion will be found by this Court if the trial court failed to follow proper procedure or misapplied the law.

*Sergi v. Sergi,* 351 Pa.Super. 588, 591, 506 A.2d 928, 930 (1986) (quoting *Braderman v. Braderman,* 339 Pa.Super. 185, 190, 488 A.2d 613, 615 (1985)).

From the evidence adduced at the hearing, the total value of the marital estate subject to equitable distribution was $159,396.75. The master purported to award 60% of the total sum to appellee and 40% to appellant.[2] Appellant maintains that the 60%/40% allocation of marital property is inequitable under the circumstances and in light of the

2. We note that the master erred in assigning the various assets to the parties and a misallocation of the sum of $1,394.95 in favor of appellee resulted. The lower court has since corrected this misallocation in its opinion.

statutory factors listed in Section 401(d) of the Divorce Code.[3] Appellant specifically contests (1) the master's distribution of two marital assets: (a) appellant's employee pension, and (b) the parties' Prudential Bache investment savings account; and (2) the equitable nature of the overall distributive scheme.

Appellant's employee pension has a calculated present value of $19,370.00. Appellant claims that while his pension rights are vested, actual receipt of any benefit is contingent upon him attaining retirement at the age of sixty-two, or early retirement at the age of fifty-five if he elects to take a lower monthly payment. Thus, he contends that he must wait at least ten years before receiving any direct benefit from these funds, while appellee has the immediate use and benefit of this asset. In response, appellee claims that the pension plan's requirement that appellant not collect until he retires is irrelevant to the equitable distribution plan recommended by the master and approved by the lower court. We agree.

In *Braderman v. Braderman*, 339 Pa.Super. 185, 488 A.2d 613 (1985), this Court was presented with the question of how to divide retirement benefits that were classified as marital property. We noted that there were two methods of distribution:

One method, the immediate offset method, divides the benefits at the time the equitable distribution order is entered by assigning a present value to them.... As we recommended ... the retirement plan should be valued as of the date of the hearing. As we stated above, only those benefits attributable to the period commencing with the marriage and ending on the date of separation are marital property.... The present value must be multiplied by the "coverture" fraction to reach the present value of the entitlement which was acquired during the marriage.... Next, the court must determine how the sum available for equitable distribution should be apportioned between the spouses according to the provisions of

3. 23 P.S. § 401(d).

the Divorce Code. After determining the non-employee spouse's interest in the benefits, the court awards these benefits to the employee spouse and offsets this award by distributing other marital property....

The second method is labeled the deferred distribution or reserved jurisdiction method, since the court retains jurisdiction and apportions the benefits when they enter pay status or mature. Under this method, present value figures are not used. Rather, the "coverture" fraction is applied to the benefits when they enter pay status since there are too many variables projected into the future....

*Id.*, 339 Pa.Superior Ct. at 197–98, 488 A.2d at 619–20. In comparing the two types of distribution, the *Braderman* court stated that:

The immediate offset method has the advantage of avoiding further entanglement between the parties. Problems with continuing court supervision and enforcement are also avoided. This method's greatest virtue, however, is that it effectuates a final and immediate settlement of the distribution of the retirement benefits. In contrast, the deferred distribution method equally divides the risk of forfeiture before maturity among the parties, but also prolongs the strife and hostility between the parties by extending the time for a final resolution of the parties' assets. Although an immediate offset is preferred, ... this method is impractical where the parties do not possess enough assets to offset the pension award. When the value of the employee-spouse's pension far exceeds the value of the other marital property, the deferred distribution method must be used.

*Id.* The *Braderman* court did not attempt to set a standard distribution scheme to be used in every case. It did state, however, that "the trial courts ... must balance the advantages and disadvantages of each alternative method as applied to the facts of each particular case to determine which method best effectuates a fair and equitable distribution." *Id.*, 339 Pa.Superior Ct. at 199, 488 A.2d at 620.

In this case, appellant does not contest the inclusion of his pension rights in the marital estate; he does however, contest the use of the immediate offset method in allocating his pension rights between himself and appellee. When a property right is includable the court must allocate the interest fairly, consistent with the legislative intent to effectuate economic justice between the parties. 23 P.S. § 102(a)(6). Here, appellant's pension rights have vested. *See Flynn v. Flynn, supra.*[4] In addition, it is undisputed that the total value of the pension as of the date of separation is marital property. Moreover, the parties have enough assets to offset the pension award. On this record, we cannot conclude that the trial court erred in affirming the master's recommendation for the immediate offset method. *See Braderman v. Braderman, supra.*

■ Appellant next contests the division of the Prudential Bache investment savings account, which has a present value of $29,600.00. The master awarded each party 50% of this account, instead of the 60%/40% division of marital assets generally recommended, because a restriction on the account allows removal of only 10% per year without penalty. Appellant contends that the master's allocation of this asset is inequitable for two reasons. First, appellant argues that the award of 10% of the account to appellee over the next six years gives her the assurance of receiving $14,800.00, while the risk of fluctuation in the value of the investment falls solely on him. Second, appellant claims that he is precluded from receiving any monies from this account for the next six years unless he incurs the penalty imposed on excessive withdrawals, which would be applied solely to his account. These claims are meritless.

4. In a situation where immediate offset distribution is employed to divide non-vested pension rights, the employee spouse is required to bear all the risk of non-payment. *Flynn v. Flynn,* 341 Pa.Super. 76, 92, 491 A.2d 156, 161 (1985). "To say that the nonemployee-spouse shares this risk by 'receiving an immediate offset of property that may prove less than the worth of the pension benefits ultimately received ...' still does not equalize the risk of nonpayment." *Id.*

First, as appellee notes, the risk of loss will not fall solely upon appellant's shoulders. Appellee was awarded up to 60% of the investment account (10% for 6 years), and no less than $14,800.00 or 50%. If the investment is sound, then appellant bears no risk of realizing less than 40% of the account. This distributive scheme is consistent with the overall 60%/40% equitable division recommended by the master. Furthermore, if the investment plan is unsound, appellee will receive 10% per year until she has received 50% or $14,800.00. Appellee, therefore, will not receive more than 60% and may in fact only receive 50%.

Second, we are not convinced that the fact that appellant cannot withdraw money from the account without paying a penalty renders the distribution inequitable. The master determined that this plan was the most expedient way to distribute the marital assets, and to give appellee her share while not causing undue burden to appellant. Thus, the plan was consistent with the master's general objective in awarding appellee her equitable share as efficiently as possible without drawing on appellant's other assets.

██ Appellant also argues that the distributive scheme is inequitable because appellee will have the immediate use and benefit of $81,033.00 worth of marital property,[5] while he will have the immediate use and benefit of only $28,193.75 worth of marital property.[6] The master awarded a distribution of marital assets based upon a 60%/40% division. Once the trial court deducted $1,394.95 from appellee's share and allocated it to appellant, he received 40% or $48,958.70 of the marital property while appellee received 60% or $80,838.05 as recommended by the master. Appel-

---

**5.** We note that the marital property to which appellant claims appellee has "immediate access to" consists largely of the marital home, her own personal assets in savings and a life insurance policy. *See* Master's Report, R.R. at 17–18.

**6.** Appellant arrives at these figures by first taking the $82,233.00 allocated to appellee and subtracting her $1,200.00 share of the pension. He arrives at the $28,193.75 by subtracting the value of his pension worth $19,370.00 from his $47,563.75 equitable share. In addition to these sums, each party has an expectation of receiving income from the investment account.

lant has not cited to any authority, and our research has revealed none, to support the proposition that the master must distribute assets based upon their immediate liquid cash value. Thus, appellant's contention, that he is somehow being deprived of his equitable share simply because he cannot immediately convert his share into cash, is meritless. Accordingly, we cannot conclude that the trial court abused its discretion in adopting the equitable distribution scheme of the master. *See King v. King,* 332 Pa.Super. 526, 481 A.2d 913 (1984).

Appellant next contends that the trial court abused its discretion in refusing to credit appellant with certain deductions from the value of marital property in his possession in calculating the total value of marital property subject to equitable distribution. Specifically, appellant maintains that he should have been allowed a deduction for the cost of a family vacation and for the cost of his additional federal income tax liability. We disagree.

■ The first deduction that appellant maintains was erroneously disallowed was in the amount of $1,506.37, and was attributable to travel and lodging expenses incurred during a Florida vacation with the family. It is undisputed that these expenses were incurred during a period of time when appellant and appellee were attempting a reconciliation and living together as husband and wife. Because they were not expenses incurred after final separation, but money appellant voluntarily spent when taking his family on vacation during a period of reconciliation, credit for this sum was properly denied. *See Thomas v. Thomas,* 335 Pa.Super. 41, 483 A.2d 945 (1984); *Pangallo v. Pangallo,* 329 Pa.Super. 25, 477 A.2d 885 (1984).

■ The second deduction that appellant claims was erroneously disallowed concerns his payment of federal income tax for the 1986 tax year. Appellant and appellee were residing together as husband and wife at the time of the tax payment and appellee exercised her option not to file a joint income tax return with appellant. Appellant argues that because he had to file his tax returns in the status of

married filing separately, he was placed in a higher tax bracket and incurred an additional tax liability of $3,438.00. Thus, appellant claims that because appellee declined to file joint tax returns for the 1986 tax year, she should be held liable for his higher tax liability. Appellant cites no authority and our research has revealed none, to suggest that a spouse who chooses not to file a joint income tax return thereby becomes liable for the additional tax liability due to their separate filing.[7] Accordingly, we cannot conclude that the trial court abused its discretion in finding that payments made by appellant to satisfy his tax obligations during his marriage were not deductible from the value of the marital assets credited to him.

■ Appellant finally contends that the trial court abused its discretion in awarding appellee $1,000 towards attorney's fees. The court, in its discretion, is permitted to award reasonable amounts for fees and costs pursuant to section 502 of the Divorce Code.[8] *Thomson v. Thomson,* 359 Pa.Super. 540, 544, 519 A.2d 483, 486 (1986). An award of counsel fees is appropriate when necessary for either spouse to maintain or defend a divorce action. *Id.* The court makes this determination by examining the size of the moving party's estate, the value of counsel's services, and the ability to pay. *Semasek v. Semasek,* 331 Pa.Super. 1, 10, 479 A.2d 1047, 1054 (1984).

In the instant matter, the trial court adopted the master's recommendation to award counsel fees to appellee. The master had noted that there was a great disparity between the parties' incomes and their ability to bear expenses, and awarded appellee $1,000 "to help her defray her costs and attorney's fees," while denying her request for alimony. The recommendations of the master were based upon adequate evidence. *See* Trial Court Record, R.R. at 148–230. Accordingly, we conclude that the trial court did not abuse its discretion in adopting the master's recommendation and awarding $1,000 in counsel fees to appellee.

**7.** *But cf. Gruver v. Gruver,* 372 Pa.Super. 194, 539 A.2d 395 (1988).

**8.** 23 P.S. § 502.

466

For the foregoing reasons, we affirm the order below. Order affirmed.