571 A.2d 392

**Marie Helen RYAN, Appellant at No. 1500,**

v.

**Joseph Francis RYAN, Appellant at No. 1370.**

**Appeal of JEFSABA, INC., at No. 1499.**

Superior Court of Pennsylvania.

Argued Dec. 6, 1988.

Filed Jan. 16, 1990.

Reargument Denied March 28, 1990.

we will not disturb the trial court's judgment in this arena. *See, e.g. Commonwealth v. Sanders, supra.*

328

Leonard Dubin, Philadelphia, for Joseph Ryan, appellant (at 1370) and appellee (at 1499 and 1500).

Ralph M. Evans, Philadelphia, for Marie Ryan, appellant (at 1500) and appellee (at 1370 and 1499).

Before CIRILLO, President Judge, and BECK and KELLY, JJ.

Opinion by BECK, Judge:

This case presents the question of whether in making an equitable distribution award a trial court may order a "buy-out" of stock instead of an in-kind distribution of stock in a closely-held corporation. We conclude that under the circumstances of this case, it was error for the trial court to order an in-kind distribution.

Marie Ryan (wife) and Joseph Ryan (husband) were married for twenty-seven years prior to their final separation in March of 1982. One child was born of the marriage and husband adopted wife's two children from a previous marriage. All three children are emancipated adults. Both husband and wife are in their sixties. In 1979, husband suffered a stroke and is now confined to a wheelchair.

After hearings before the Master in Divorce, the Master determined that the marital assets, exclusive of income, totalled $1,020,711.00. Husband filed exceptions to the Master's report, but wife did not. Husband's exceptions included an exception to the Master's recommendation that wife be awarded half of husband's stock in Jefsaba Inc. (Jefsaba), a closely-held corporation.

The trial court accepted the Master's finding that the major marital asset was husband's interest in Jefsaba which owns the Holiday Inn in New Hope, Pennsylvania. The master determined that at the time of the hearing, Jefsaba had a net value of $2,448,000, and that husband owned 20 of the 66 outstanding shares of the corporation. Therefore, his interest constituted 30.3% of the corporation's net value or $741,744.00. The trial court adopted the Master's recommendation that ten of the shares, or one-half of the marital unit's total, be transferred to wife.

In his exceptions, husband noted that pursuant to an agreement entered into by the five stockholders of Jefsaba, unanimous consent of all stockholders is required as a condition for any transfer of shares. Noting that this agreement was entered into just eleven days prior to the first scheduled Master's hearing, the trial court adopted the Master's view that the agreement was motivated by a desire to thwart wife's claim in the divorce action. The trial court found binding an earlier agreement which allowed transfer of Jefsaba shares to a member of a stockholder's immediate family on the condition that the transferred shares be non-voting.

Both parties filed petitions for reconsideration of the trial court's order. The trial court granted reconsideration and later issued a Supplemental Opinion and Order dated April 8, 1988. In this opinion, the court discussed husband's contention that the court erred in ordering an in-kind distribution of the Jefsaba stock. In support of his position, husband cited cases from other jurisdictions which recognize the reality that parties who cannot get along as husband and wife are unlikely to do so as business partners.

The trial court reached its decision based upon its belief that *Barletta v. Barletta*, 506 Pa. 404, 485 A.2d 752 (1984) controlled and *mandated* in-kind distribution as opposed to a "buy-out" remedy. The court also noted that it would be difficult to value the stock accurately at the time of the court proceeding. The court recognized that the value as determined by the Master at the hearing in 1984 was no

longer accurate; implying, thereby, that a buy-out would require further proceedings.

In his report, the Master found that wife was entitled to 25% of husband's gross income from Jefsaba for the years 1982–1984. The trial court, applying *Sutliff v. Sutliff,* 361 Pa.Super. 504, 522 A.2d 1144 (1987), *aff'd in part and rev'd in part,* 518 Pa. 378, 543 A.2d 534 (1988), which was not decided at the time of the Master's hearing, concluded that wife was entitled to 50% of this income for the years 1982–1984, and denied wife any distribution for subsequent years. The trial court noted that the Master's report "only dealt with the period 1982–1984, and insufficient information exists in the record to render an award as to subsequent years."

In her petition for reconsideration, wife sought equitable distribution of the dividends from Jefsaba for years subsequent to 1984. In its supplemental opinion, the trial court held the issue waived based upon wife's failure to file exceptions to the Master's report.

Following the entry of the Supplemental Opinion and Order, wife filed the instant appeal and husband filed a cross-appeal.[1]

### Appeal of Wife

The wife asserts she is entitled to 50% of the dividends from the Jefsaba stock from 1984 through the date of the trial court hearing, July 8, 1987, and that the trial court erred in finding that she was entitled to 50% of the dividends from the Jefsaba stock only to the date of the Master's hearing in 1984. In response to wife's petition for reconsideration, the trial court held that wife waived the issue by failing to file exceptions to the master's report.

1. Jefsaba has filed an appellate brief on the issue of whether in-kind distribution of its stock to the wife was proper. Since Jefsaba was not a party below, its participation in this appeal is improper and will not be considered. We note that wife's petition to join Jefsaba at the trial level was denied.

In the second section of this opinion we determine that the trial court erred in ordering an in-kind distribution of Jefsaba stock to wife and that the case must be remanded for a valuation of husband's Jefsaba stock and a distribution of wife's share of that value. Given this determination, we find that we need not decide whether wife has properly preserved the issue of her entitlement to dividends accruing past the date of the original master's hearing in 1984. On remand, wife may seek leave of the trial court to except on this ground *nunc pro tunc*. Pa.R.C.P. 1920.55. If the trial court again refuses to take testimony as to dividends accruing since mid–1984 and, therefore, refuses to distribute a portion of those dividends to wife, and if wife again appeals that determination, then the difficult waiver problem posed by this case will require decision.

### Husband's Cross–Appeal

■ Husband asserts that the trial court erred in ordering an "in-kind" distribution of the Jefsaba stock: (1) where neither party sought this remedy; (2) where it would be unwise to force the parties into a business relationship; and (3) where the trial court erred in its interpretation and application of *Barletta*.[2]

Husband claims that neither party in this case requested an in-kind distribution. In support of this contention, husband notes that during the Master's hearing, wife produced testimony as to the value of the stock pursuant to a "buy-out" remedy. In addition, wife's post-trial memorandum on "the issue of equitable division of marital property" included a category entitled "assets in name of husband"

---

**2.** Husband asserts that we should consider the 1988 Amendment to Section 401(d) of the Divorce Code which specifies that marital property may be subject to remedies other than in-kind distribution:

"In a proceeding for divorce or annulment, the court shall, upon request of either party, equitably divide, distribute or assign, *in-kind or otherwise,* the marital property between the parties ..." (emphasis in amendment.)

Pa.Stat.Ann. title 23, § 401(d) (as amended). Because of our resolution of this issue under *Barletta* and its progeny, we find it unnecessary to pass on the retroactivity of this amendment.

under which was listed: "Jefsaba, Inc. stock, value as determined by Master." Husband also points out that in her post-trial memorandum, wife acknowledged that it is "not practicable to order the transfer of one-half of the stock of JEFSABA." Instead, wife suggested that husband pay her one-half of the value of the stock.

In response to husband's contention, wife admits that she considered a "buy-out" as a possible remedy. She acknowledges that such a suggestion appeared in her post-trial memorandum. However, wife now asserts that based on *Barletta*, the "unreasonableness of a buy-out, with the inherent problems of valuation involved, became obvious."

Our review of the trial court opinions makes clear that the in-kind distribution in this case was ordered because the trial court interpreted *Barletta* as *mandating* in-kind distribution over the remedy of a "buy-out." We believe that the trial court read *Barletta* too broadly.

In *Barletta*, the trial court ordered the husband, over his objection, to "buy-out" his wife's interest in certain marital personal property, all of which was readily severable. 506 Pa. at 408, 485 A.2d at 754. The Pennsylvania Supreme Court reversed the trial court and concluded that under the facts of *Barletta*, such a "buy-out" was improper. The assumption underlying the *Barletta* decision was that the spouse would have to sell the personalty, in a declining market, in order to satisfy the obligation under the equitable distribution order.

Initially, we note that contrary to the trial court's conclusion in the instant case, *Barletta* does not *mandate* in-kind distribution. The *Barletta* Court itself concluded:

> We are not saying that the remedy of ordering a 'buy-out' is prohibited by statute ... we can envision situations where the distribution of marital property would be truly impracticable or economically unwise.

506 Pa. at 409, 485 A.2d at 754. The *Barletta* court held that the personal property in that case should have been divided between the parties and not distributed to one

spouse because the personalty "was readily severable and we believe capable of being divided without destroying its relative value." 506 Pa. at 408, 485 A.2d at 754. The *Barletta* Court concluded that "in the context of the present case, the remedy of a 'buy-out' was an abuse of discretion." *Id.* Subsequent cases interpreting *Barletta,* such as *Bold v. Bold,* 374 Pa.Super. 317, 542 A.2d 1374 (1988), and *Wolf v. Wolf,* 356 Pa.Super. 365, 375, 514 A.2d 901, 906 (1986), note that under *Barletta,* a court may resort to a "buy-out" remedy where it makes specific findings as to why the marital property cannot be divided.

In the instant case, the facts differ considerably from those in *Barletta.* Neither party objected to the "buy-out" remedy. Stock in a closely-held corporation, although personalty, is different in nature from the type of personal property involved in *Barletta.* As we noted, the *Barletta* court was concerned with the fact that husband would have been forced to sell the personalty in order to satisfy the equitable distribution order. In the instant case, husband is ready, willing and able to satisfy a "buy-out" order.

Perhaps the most notable difference between these two cases is that in *Barletta,* the in-kind division of the personalty does not pose the problems which division of the stock in a closely-held corporation poses. The division of the in-kind personalty in *Barletta* permitted each party to go his and her separate ways. An in-kind division of stock in a closely-held corporation will usually force the parties into a continuing relationship. On policy grounds it is unwise to make business partners of individuals who are unable to live together as husband and wife. In the absence of special circumstances, the courts should not place divorced parties into the position where they have a continuing economic relationship with one another. Even assuming that an in-kind distribution of the stock will not bring husband and wife into daily contact, an in-kind distribution necessitates a lingering connection between two parties who obviously wish to sever their ties.

We have already determined that *Barletta* permits a "buy-out" in appropriate situations, and that this case presents a situation where a "buy-out" remedy is warranted. We therefore conclude that the trial court erred in ordering an in-kind distribution. We remand in order that a hearing may be conducted to determine the value of the Jefsaba stock so that husband may "buy-out" wife's interest.

The order of the trial court is reversed and the case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

CIRILLO, President Judge, files a dissenting opinion.

CIRILLO, President Judge, dissenting.

I respectfully dissent from both the majority's disposition of Mrs. Ryan's appeal and its disposition of the cross-appeal filed by Mr. Ryan.

The majority states that it will not decide whether Mrs. Ryan has properly preserved the issue of her entitlement to dividends accruing past the date of the original master's hearing in 1984 because of its disposition of Mr. Ryan's cross-appeal. With respect to Mr. Ryan's cross-appeal, the majority finds that the trial court erred in ordering an in-kind distribution of Jefsaba stock to Mrs. Ryan and remands this case for a valuation of Mr. Ryan's stock and a distribution of Mrs. Ryan's share of that value. The majority states that on remand Mrs. Ryan may seek leave of the trial court to except *nunc pro tunc* on the issue of her entitlement to the dividends accruing after 1984. *See* Pa.R. C.P. 1920.55. If the trial court refuses to take testimony as to those dividends accruing since mid–1984 and therefore refuses to distribute a portion of those dividends to Mrs. Ryan, and if Mrs. Ryan again appeals that determination, then the majority would decide the waiver issue.

Because I believe that the trial court did not err in ordering an in-kind distribution of Jefsaba stock to Mrs. Ryan, I find it necessary to address whether Mrs. Ryan has

waived her right to challenge the trial court's conclusion that she was not entitled to any of Mr. Ryan's income from Jefsaba from 1984 through the date of the master's hearing, July 8, 1987. For the foregoing reasons I would find that by failing to file exceptions to the master's report Mrs. Ryan has waived her right to contest the trial court's conclusion that she was only entitled to 50% of the income from Jefsaba for the years 1982–1984.

The master found that Mrs. Ryan was entitled to 25% of Mr. Ryan's income from Jefsaba for the years 1982–1984. The trial court *modified* the master's recommendation by stating that Mrs. Ryan was entitled to *50%* of the income from Jefsaba for the years 1982–1984. The trial court, like the master, denied Mrs. Ryan any distribution for the years following 1984. Thus, while the trial court did, in fact, modify the report of the master on the issue of dividends, this modification related *solely* to the percentage of income Mrs. Ryan would be entitled to for the years 1982–1984. The trial court *did not* alter the master's finding that Mrs. Ryan was not entitled to any income for 1984 through July 8, 1987.

In *Benson v. Benson*, 357 Pa.Super. 166, 515 A.2d 917 (1986), we held

> No exceptions need be filed to preserve for appeal issues which claim the trial court erred when in response to the opposing party's exceptions, it entered a final decree which altered the terms of the master's report and proposed order.

*Id.*, 357 Pa.Superior Ct. at 169, 515 A.2d at 918. However, we also stated in *Benson* that Pa.R.C.P. 1920.55 [1]

---

1. Pa.R.C.P. 1920.55 states:
   (a) Within ten days after notice of the filing of the master's report has been mailed, exceptions may be filed by any party to the report or any part thereof, to rulings on objections to evidence, to statements or findings of fact, to conclusions of law, or to any other matters occurring during the hearing. · Each exception shall set forth a separate objection precisely and without discussion. Matters not covered by exceptions are deemed waived unless, prior to entry of the final decree, leave is granted to file exceptions raising those matters.

requires a party who is dissatisfied with a master's report to file exceptions to the report, or waive any such objections. On the other hand, logic dictates that a party who is satisfied with the report need not except to it. When the trial court alters the terms of the report in response to the opposing party's exceptions, Rule 1920.55(c) provides no motions for post-trial relief may be made. Accordingly, the only occasion to raise objections to this final decree is through a direct appeal, and any issues which claim the court's ruling was erroneous are preserved because they are raised at the first available opportunity.

*Benson,* 357 Pa.Super. at 170, 515 A.2d at 919.

I believe that the reasoning in support of our decision in *Benson* buttresses my position that Mrs. Ryan waived her rights by not filing exceptions to the master's report. If Mrs. Ryan was satisfied with the master's report then she would have had no reason to except to it. Mrs. Ryan, however, was apparently not satisfied with the report because she now argues that the trial court erred when it concluded that she was only entitled to income from Jefsaba for the years following 1984. Both the master and the trial court stated that Mrs. Ryan was not entitled to income for 1984 through July 8, 1987. If Mrs. Ryan was dissatisfied with the master's finding that she was only entitled to receive dividends for the two year period, she should have filed an exception to the master's report.[2] I would find that Mrs. Ryan has failed to preserve her issue for appeal.

(b) If no exceptions are filed to the master's report within the ten-day period, the court shall review the report and if approved shall enter a final decree.

(c) If exceptions are filed, the court shall hear argument on the exceptions and enter an appropriate final decree. No Motion for Post–Trial Relief may be filed to the final decree.

2. Both Mr. and Mrs. Ryan filed petitions for reconsideration. In her petition, Mrs. Ryan raised the issue now before us on appeal. In a supplemental opinion dated April 8, 1988, Judge Cipriani denied both petitions and stated that because Mrs. Ryan filed no exceptions to the master's report, she had no standing to pursue the issue through a petition for reconsideration.

In connection with Mr. Ryan's appeal,[3] the majority believes the trial court ordered an in-kind distribution of the stock because the trial court interpreted *Barletta v. Barletta,* 506 Pa. 404, 485 A.2d 752 (1984) as mandating an in-kind distribution over the remedy of a "buy-out." While I agree with the majority that the trial court read *Barletta* too broadly, I do not believe the trial court abused its discretion by ordering the in-kind distribution. *Barletta* does not, as the majority correctly notes, require an in-kind distribution in every case, but merely states that "prior to a court making or approving a buy-out remedy, it is required to make specific findings as to why a division of the property cannot be effectuated." *Barletta,* 506 Pa. at 409, 485 A.2d at 754–55; *see also Wolf v. Wolf,* 356 Pa.Super. 365, 514 A.2d 901 (1986). Therefore, it is clear that *Barletta* permits a "buy-out" in certain situations.

My disagreement with the majority lies with its belief that "this case presents a situation where a 'buy-out' remedy is warranted," and its conclusion that by ordering an in-kind distribution the trial court committed an abuse of discretion. A trial court is permitted to exercise its discretion in fashioning the equitable distribution of marital property and we will not disturb the decision of the trial court absent an abuse of discretion. *Ganong v. Ganong,* 355 Pa.Super. 483, 490, 513 A.2d 1024, 1028 (1986); *see also Benson, supra.* "An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence." *Braderman v. Braderman,* 339 Pa.Super. 185, 190, 488 A.2d 613, 615 (1985). "An abuse of discretion has

---

**3.** In a footnote in its opinion, the majority notes that Mr. Ryan requested this court to apply the 1988 amendment to section 401(d) of the Divorce Code in resolving his appeal. The majority states: "Because of our resolution of this issue under *Barletta* and its progeny, we find it unnecessary to pass on the retroactivity of this amendment." Apparently, the majority did not reach the retroactivity issue because it concluded that under *Barletta* this case warranted the buy-out method of distribution. My interpretation ·of *Barletta* likewise does not necessitate deciding the retroactivity issue. Under *Barletta* I conclude that the trial court did not abuse its discretion in ordering the in kind distribution of the stock. Since under amended section 401(d) I would reach the same conclusion, it is unnecessary for me to address the retroactivity issue.

been defined as 'not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.' " *Id.,* 339 Pa.Superior Ct. at 190 n. 2, 488 A.2d at 615 n. 2, *citing Commonwealth ex rel. Levy v. Levy,* 240 Pa.Super. 168, 361 A.2d 781 (1976). Moreover, as an appellate court we may affirm the decision of the trial court on any ground regardless of whether the reasons given by the trial court are incorrect. *Coatesville Development Company v. United Food and Commercial Workers, AFL–CIO,* 374 Pa.Super. 330, 338, 542 A.2d 1380, 1384 (1988).

As I noted above, I agree with the majority's finding that the trial court misinterpreted *Barletta* as requiring an in-kind distribution. The trial court, however, offered additional support for its decision to distribute the stock in-kind. The Honorable Nicholas A. Cipriani stated in a supplemental opinion and order dated April 8, 1988:

> Aside from *Barletta,* our decision to order a physical division, rather than a "buy-out," was premised on the unavoidable difficulty in placing a proper valuation on the closely held stock. In seeking reconsideration, counsel for the Husband maintains that the Court should calculate the worth of the Holiday Inn by utilizing certain figures that were presented by the Husband's accountant (Alvin Rosenberg) and by an appraiser (George Sengpiel) at the time of their testimony in 1984. However, this is now 1988, and it would clearly be inappropriate to use figures that are so outdated for purposes of ascertaining current market value.

> As noted by the Superior Court in *Sergi v. Sergi,* [351 Pa.Super. 588], 506 A.2d 928, 932 (Pa.Super.1986), "equitable results will most likely flow from providing the court with the most recent information available." Therefore, if we went the route of ordering a "buy-out" of the Wife's interest in the Jefsaba shares, it would be necessary for us to elicit a new comprehensive appraisal,

based on current information as to corporate earnings and real estate values. This would obviously require the expenditure of additional time in a case that is already five years old. Moreover, we suspect that the figures produced by any appraisal would still be disputed, given the intrinsic difficulties in evaluating closely held stock. Consequently, a physical division of the shares is clearly preferable in this situation, both because it is more likely to produce an equitable result and because it would avoid further delay.

Thus, I believe that the reasoning offered by the trial court, notwithstanding its misinterpretation of *Barletta*, is sufficient to support its decision to order an in-kind distribution of the Jefsaba stock.

Moreover, if section 401(d) was to be held retroactive and applied to resolve Mr. Ryan's appeal, I would continue to remain with my affirmance of the trial court's decision to order an in-kind distribution. Section 401(d) in pertinent part now states:

> In a proceeding for divorce or annulment, the court shall, upon request of either party, equitably divide, distribute or assign, *in-kind or otherwise,* the marital property between the parties ... in such proportions and in such manner as the court deems just.

23 P.S. § 401(d) (emphasis added) (as amended, February 12, 1988, effective immediately.) Here, the trial court distributed the property in-kind and in such a manner as it deemed just. Accordingly, I would find that the trial court committed no abuse of discretion and would affirm the trial court's decision to physically divide the shares of stock between Mr. and Mrs. Ryan.