J-A08034-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| THOMAS D. WYATT, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| BARBARA ANN WYATT, | : | |
| | : | |
| Appellant | : | No. 1228 MDA 2013 |

Appeal from the Order Entered July 10, 2013,
in the Court of Common Pleas of Perry County,
Civil Division, at No(s): 2007-206

BEFORE:   SHOGAN, WECHT, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED JUNE 11, 2015**

Barbara Ann Wyatt (Wife) appeals from the order entered July 10, 2013, which decreed that she and Thomas D. Wyatt (Husband) are divorced, and ordered equitable distribution of the marital property.  We affirm in part, vacate in part, and remand for the trial court to enter an order consistent with this memorandum.

Husband and Wife married in 1970 and separated in 2006.[1]  During this lengthy marriage, which was the first for both parties, the parties obtained a number of marital assets.  At the time of the master's hearing, Husband was 62-years-old and employed as an engineer by Amtrak earning

---

[1] The parties have maintained separate households since 2001, with Husband living in a home in Pennsylvania (the Duncannon property) and Wife living in the former marital residence, purchased in 1973, in New Jersey (the New Jersey property).  Notably, the New Jersey property's mortgage was paid off with funds Husband inherited from his father.

*Retired Senior Judge assigned to the Superior Court.

$101,000 per year.  At the same time, Wife was 61-years-old and employed part-time in the health care industry earning $31,397 per year.  For the majority of the marriage, Wife stayed home to raise the parties' two, now adult, children, although she held brief stints of employment in her field from 1986 to 1989 and again from 1991 to 1999.

The parties resided together in the New Jersey property until Husband's employment with Amtrak was transferred to Pennsylvania.  The parties then purchased the Duncannon property together in early 2000 and performed significant renovations.  After Wife's mother died in 2004, it is stipulated that Wife used $107,765.37 of her inheritance to satisfy the mortgage on that residence.  Husband signed a promissory note confirming that he was responsible for repaying that amount to Wife.

As a long-time railroad employee, Husband acquired a pension and other retirement benefits.  In addition to the real estate, the parties possessed various antiques and collectibles, memorabilia, a classic car, and a substantial clock and watch collection.

Husband filed a complaint in divorce on August 20, 2007, seeking equitable distribution of the parties' marital assets.[2]  After a hearing before a

_____

[2] Wife filed a separate action for spousal support, which was intensely litigated throughout 2007 and 2008.  At the time of the master's hearing, Husband was paying Wife $1,150 per month in support, and had already paid Wife $57,957.50 between 2007 and 2012.

master, the master issued a report on March 7, 2012, which included the

following recommendation with respect to equitable distribution.

> The Master recommends that the marital assets of the parties total $887,593 excluding Husband's Tier I Benefit of his railroad Pension and Wife's spousal Tier I Benefit. The Master recommends that the marital liabilities total $12,720. The Master recommends that Husband borrowed from Wife non-marital inheritance monies in the amount of $107,765 which Husband shall repay to Wife as hereinafter set forth. Based on the above discussed factors, the Master recommends that Husband receive [f]orty-five (45%) percent of the assets and Wife receive [f]ifty-five (55%) percent of the assets and the parties share equally in the repayment of the $12,720 debt in the manner hereinafter set forth[.]

Report and Recommendation of Master (Master's Report), at § IV(D).

> With respect to alimony, the master recommended the following.

> Wife is receiving 55% of the marital estate worth $488,176 and is responsible for $6,996 in marital debt for a net distribution of $481,180. Of this amount, most of the assets are tied to retirement benefits that she can begin collecting at age 62. Wife can begin collecting at least $1,215 Tier I spousal benefit two years from the date of the divorce unless her own social security benefits are greater. Wife will receive full retirement benefits if she waits until her full retirement age of 66. Wife has non-marital assets of approximately $142,000, most of which will be available to her within 60 days of the final order relating to equitable distribution.

> \*\*\*

> The Master recommends an alimony award to be paid by Husband to Wife of $1,150 per month for a period of 24 months from the date of the divorce decree[.]

*Id*. at § V(B).

Additionally, the master also recommended that each party pay his or her own counsel fees. Wife timely filed numerous exceptions to the recommendation of the master, and on June 7, 2013, the trial court entered an order modifying the master's recommendation in part. Specifically, the trial court adjusted Husband's alimony payment to Wife by increasing it from $1,150 to $1,350 per month, but decreasing the number of months from 24 to 18. Order, 6/7/2013, at ¶ B.

On July 10, 2013, the trial court entered a decree in divorce, which incorporated the June 7, 2013 order. Wife timely filed a notice of appeal and concise statement of errors complained of on appeal. Wife sets forth numerous issues for our consideration, which we review mindful of the following principles.

> It is well established that absent an abuse of discretion on the part of the trial court, we will not reverse an award of equitable distribution. [In addition,] when reviewing the record of the proceedings, we are guided by the fact that trial courts have broad equitable powers to effectuate [economic] justice and we will find an abuse of discretion only if the trial court misapplied the laws or failed to follow proper legal procedures. [Further,] the finder of fact is free to believe all, part, or none of the evidence and the Superior Court will not disturb the credibility determinations of the court below.

*Lee v. Lee*, 978 A.2d 380, 382-83 (Pa. Super. 2009) (quoting *Anzalone v. Anzalone*, 835 A.2d 773, 780 (Pa. Super. 2003)).

Moreover,

- 4 -

[w]e do not evaluate the propriety of the distribution order upon our agreement with the court['s] actions nor do we find a basis for reversal in the court's application of a single factor. Rather, we look at the distribution as a whole, in light of the court's overall application of the [23 Pa.C.S.A. § 3502(a)] factors [for consideration in awarding equitable distribution]. If we fail to find an abuse of discretion, the [o]rder must stand. The trial court has the authority to divide the award as the equities presented in the particular case may require.

*Childress v. Bogosian*, 12 A.3d 448, 462 (Pa. Super. 2011) (internal citations and quotations omitted).

Wife's first issue concerns the distribution of Husband's Amtrak pension benefit. Wife complains that the trial court erred in confirming the master's recommendation in awarding a portion of Husband's Tier 2 railroad retirement defined benefit plan utilizing an immediate offset method. Wife's Brief at 20-23.

The immediate offset method awards other assets in lieu of pension benefits; receipt occurs at the time of the distribution hearing, even for pensions only receivable in the future. This method is impractical where the parties do not have enough assets to offset the pension award. When the value of the employee-spouse's pension far exceeds the value of the other marital property, the deferred distribution method must be used.

The deferred distribution method requires the court to reserve jurisdiction and allocate benefits when they mature or enter pay status. It is the preferred means of dividing unvested pension benefits which may never actually be received by the employee-spouse due to contingencies such as early termination or death. Present value figures are not used; rather, only the coverture fraction is applied to the benefits when they enter pay status.

- 5 -

> Both distribution methods are recognized and acceptable ways to distribute the marital portion of pension benefits. The trial court has discretion in choosing the more appropriate means,… and must balance the advantages and disadvantages of each distribution method according to the facts of each case, in order to determine which method best effects economic justice between the parties.

*Cohenour v. Cohenour*, 696 A.2d 201, 205 (Pa. Super. 1997) (internal citations and quotations omitted).

With respect to the Tier 2 benefit, the master set forth the following. "[T]he present value of Husband's Tier 2 benefit is $178,931 or $1,791.37 per month at retirement." Master's Report at § IV(A)(4). The master recommended, and the trial court accepted, that Husband be awarded the full amount. *Id*. at § IV(D)(1).

Wife contends this was error, and that this particular marital asset should be treated separately and differently from other marital assets. She argues that rather than being a true lump sum, this asset will provide Husband a guaranteed monthly benefit until death, "while the other retirement vehicles, namely the taxable defined contribution plan and annuity, leaves its owner questioning how much to withdraw, where to invest funds, and constantly reviewing marketing conditions." Wife's Brief at 21-22. She contends this is an onerous burden for a 61-year-old woman. *Id*. at 22. Presumably, Wife contends the trial court should have utilized the deferred distribution method to ensure that she, too, would receive a

guaranteed monthly payment, rather than the immediate offset method, for Husband's pension.[3]

First, we observe that Wife cites no case law in support of her position that the master and trial court erred in utilizing the immediate offset method. Moreover, no factor favoring the deferred distribution method is present in this case. The parties stipulated to the present value of the benefit, and there is no issue as to forfeiture as Husband has clearly vested in this retirement. Moreover, there were sufficient assets in the marital estate to offset the award of the benefit to Husband. *See, e.g. Hunsinger v. Hunsinger*, 554 A.2d 89 (Pa. Super. 1989) (holding that where pension rights have vested, the value is undisputed, and the parties have enough assets to offset the pension award, trial court did not err in using immediate offset method); *Miller v. Miller*, 577 A.2d 205, 209 (Pa. Super. 1990) (providing that immediate offset method was appropriate because "[i]t gave finality to the matter and there was sufficient property other than the pension to render the more cumbersome deferred distribution method unnecessary"). Accordingly, we hold the trial court did not err in accepting the master's recommendation in awarding this benefit to Husband.

---

[3] Wife does not take issue with the fact that Husband was awarded the full amount in equitable distribution as a portion of his 45% share; rather, she appears to be concerned about her financial stability by not receiving some guaranteed monthly amount. However, Wife is still going to receive her Tier I benefit and/or social security benefit to ensure a monthly income stream.

Wife also contends the trial court erred in affirming the master's recommendation to treat the promissory note of $107,765 by Husband to Wife as a deduction from the equity in the Duncannon property. Wife's Brief at 32-34. With respect to this asset, the master concluded that the parties have a joint interest in the property and it is valued at $250,000. Because Husband owed Wife the $107,765 that was used to pay off the mortgage for that property, the master directed Husband to take out a mortgage for $107,765 within 60 days in order to pay the full amount to Wife.[4] Wife contends that the master should have used a January 2012 mortgage payoff balance in valuing the Duncannon property, rather than the April 2003 number, because the promissory note was a "separate, non-marital debt owed by Husband to Wife." Wife's Brief at 34.

> The Divorce Code does not contain a specific method for valuing assets. The trial court must exercise its discretion and rely on the estimates, inventories, records of purchase prices, and appraisals submitted by the parties. The court is free to accept all, none, or portions of the testimony regarding the true and correct value of property. Additionally, the court may reject evidence offered by both parties in favor of its own valuation method.

*Verholek v. Verholek*, 741 A.2d 792, 796 (Pa. Super. 1999) (*en banc*).

Additionally, as we have stated previously, "[t]he trial court has the authority to divide the award as the equities presented in the particular case

---

[4] Because Wife was assigned half of the marital debt due to a home equity line of credit, this amount was reduced to $101,405.

may require." ***Childress***, 12 A.3d at 462. Instantly, Husband used his inheritance from his father to pay off the mortgage on the New Jersey property, and Wife was awarded this property in equitable distribution. Moreover, had Wife not utilized the inheritance to pay off the Duncannon mortgage, then there is no question that the mortgage would have been considered marital debt, and some portion would have been deducted from Wife's assets. Accordingly, we conclude that the trial court did not abuse its discretion in accepting the master's recommendation on this valuation.

Wife also argues that the trial court erred in affirming the master's recommendation with respect to Husband's Amtrak back pay. Wife's Brief at 34-37. The master set forth this issue as follows.

> The parties stipulate that Husband received Amtrak back pay of $9,388.90 in 2008 and $14,033.33 in 2009. The parties further agree that Wife received from Husband a lump sum payment of $9,220 through a DRS spousal support action. The parties disagree as to whether the back pay was already dealt with as part of an agreement during a spousal support *de novo* hearing and therefore, not available for equitable distribution or if it was set aside as an equitable distribution issue to be decided at a later point.

Master's Report, at § IV(A)(6).

The master then summarized the relevant testimony from the hearing.

> Husband's former counsel, Todd Hough, Esquire, testified that he was present during the negotiations concerning the retroactive pay and that the settlement included the inclusion of the back pay and the advance of $2,500 for equitable distribution. He testified that there was no agreement to have the retroactive pay determined during equitable distribution.

Several letters from both counsel were admitted which support Husband's argument that the retroactive pay was dealt with during the support settlement.

*Id*.

"Wife argues that the $9,220.00 payment she received from Husband was paid to her for arrearages due and owing to her under the parties' pending support case and that it had nothing to do with an equitable division of Husband's back wage payments." Wife's Brief at 35. Wife's CPA, Gayle Bolinger, testified that "she was specifically instructed to deduct these back wage lump sum payments from Husband's gross wages for 2008 and 2009, as those two payments were to be reserved for equitable distribution purposes." *Id*. Thus, Wife argues that Attorney Hough's testimony is "not credible." *Id*. at 36.

It is well-settled that "the finder of fact is free to believe all, part, or none of the evidence and the Superior Court will not disturb the credibility determinations of the court below." *Lee*, 978 A.2d at 383. Instantly, the master credited the testimony of Attorney Hough, which was supported by documentary evidence, and we will not disturb that on appeal. Accordingly, Wife is not entitled to relief on this issue.

Wife also argues that the trial court erred by having each party pay his or her own attorneys' fees. Wife's Brief at 28-32. The master summarized the testimony as follows.

Wife testified that she has incurred $140,389.98 in counsel fees and costs. She spent $7,082 on an accounting expert to assist her counsel in reaching a settlement on spousal support and back pay issues. She spent $6,799 on an expert to value the Railroad Memorabilia which had a total value of $36,593, $11,576 of which was determined to be pre-marital. She spent $662.25 on transcript costs of De Novo Hearings and another $368.75 for the transcript of Husband's Deposition. Her counsel fees from her first attorney totaled $48,297.23 and attorneys['] fees from her second counsel total $75,635. These counsel fees did not include preparation or representation at the second or third day of testimony at the Master's Hearing. Wife testified that Husband failed to cooperate which resulted in additional attorneys['] fees. She is requesting that Husband pay for ½ of her counsel fees.

Husband testified that he has incurred counsel fees of $45,717.50 and costs of $3,291.45 as of 12/31/11. Husband testified that he has consistently cooperated in trying to settle the divorce issues. His position is that Wife has consistently dismissed his valuations and insisted on expert valuations which came close to what Husband had already suggested was the value of the asset. Further, Husband argues that Wife has taken untenable positions on issues such as the IOU and the back pay which caused Husband to incur additional [attorneys'] fees.

The Master finds that Husband did not cause Wife to incur additional counsel fees and costs. The Master further finds that Wife has incurred excessive [attorneys'] fees and costs due to her insistence on pursuing the valuation of the marital property of limited value.

The Master recommends that each party pay [his or her] own [attorneys'] fees and costs.

Master's Report, at ¶ VI.

We review an award of counsel fees mindful of the following.

We will reverse a determination of counsel fees and costs only for an abuse of discretion. The purpose of an award of counsel fees is to promote fair administration of justice by

- 11 -

enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be "on par" with one another.

* * *

Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution. Counsel fees are awarded only upon a showing of need. Further, in determining whether the court has abused its discretion, we do not usurp the court's duty as fact finder.

*Teodorski v. Teodorski*, 857 A.2d 194, 201 (Pa. Super. 2004) (internal quotations and citations omitted).

Wife argues that the trial court did not consider the income disparity, Wife's struggle to find part-time employment, as well as the fact that "in order to maintain 'equal litigation footing' with Husband, Wife had to liquidate nearly all of the investment funds she received through an inheritance from her deceased Mother in order to satisfy expert witness fees…." Wife's Brief at 29-30. Wife also argues that the "unique and substantial collection pieces in the Duncannon [property,]" for which Husband provided "only minimal valuations[,]" caused her to have to hire "three separate experts in the fields of antique clock and watch valuation, vintage automobile valuations, and railroad train collectible and memorabilia valuation." *Id*. at 30. Additionally, Wife had to get orders of court to get dates for these appraisals. She contends that "[e]xpecting a 61 year old

woman who was working only part-time and earning 1/3 of Husband's income, to satisfy all of the expert costs and expenses was neither equitable [n]or just." *Id*. at 32.

Husband responds that in addition to the findings of the trial court that Wife's conduct was the cause of excessive fees and costs, the record also established that Wife's attorneys were double-billing. "Two experienced domestic relations attorneys represented Wife jointly and attended property inspections, conferences with the court, and the Master[']s hearing itself at full double rates." Husband's Brief at 13.

Husband's contentions are supported by the record. Wife offered the following examples in testimony in response to questions from Husband's counsel at the master's hearing.[5]

> Q. So on that date we had two lawyers meeting with Mr. Wagner in Carlisle; correct?
>
> A. That is what it shows here.
>
> Q. Okay. And you were billed for both their times, were you not?
>
> A. Yes.
>
> ***
>
> Q. Would you look at June 10th, 2010, please, near the top of the page?

---

[5] The bills reflected Lawyer: 1 and Lawyer: 41. It was determined that Lawyer :1 was Attorney Serratelli and Lawyer: 41 was Attorney Boyanowski. N.T., 2/13/2012, at 185.

A. (Witness complies.)

Q. Lawyer: 1, 4 hours times $250.00. That was meeting with client on that date.

　　Also on June 10th, Lawyer: 41, 4 hours time[s] $250.00, meeting with client and [Attorney Serratelli].

***

Q. …So you met with both of them at the same time?

A. Yes.

Q. And you were billed $2,000.00 for that meeting?

A. Yes.

N.T., 2/13/2012, at 186-87.

Because the findings of the master are supported by the record, we conclude the trial court did not abuse its discretion in ordering each party to be responsible for its own counsel fees. Accordingly, Wife is not entitled to relief on this issue.

Wife also contends the trial court erred by decreasing the term of her alimony award. Wife's Brief at 24-28. Wife contends that this was error because she is not eligible to receive her full retirement benefits until she turns 66, on December 31, 2016.

> The role of an appellate court in reviewing alimony orders is limited; we review only to determine whether there has been an error of law or abuse of discretion by the trial court. Absent an abuse of discretion or insufficient evidence to sustain the

support order, this Court will not interfere with the broad discretion afforded the trial court.

Likewise: The purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met. In determining the nature, amount, duration and manner of payment of alimony, the court must consider all relevant factors, including those statutorily prescribed for at 23 Pa.C.S.A. § 3701. Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay.

*Dalrymple v. Kilishek*, 920 A.2d 1275, 1278-79 (Pa. Super. 2007) (internal citations and quotations omitted).

Instantly, the master evaluated the factors set forth in 23 Pa.C.S. § 3701 and concluded that Wife should receive alimony payments for 24 months after the divorce is final. Wife filed an exception to this recommendation and asked the trial court to increase the term of her alimony. However, the trial court instead decreased the term by six months, but increased payments by $200 per month, which still left Wife with less money overall.[6] The trial court provided no rationale for this modification. Moreover, Wife has been receiving $1,150 per month from Husband for years; the parties have a large income disparity; and, the marriage was lengthy. Accordingly, we hold that the trial court abused its discretion as to

_____

[6] The trial court's order resulted in a net decrease in alimony to Wife of $3,300.

the issue of alimony; thus, we vacate that portion of the order and remand to the trial court for reconsideration.

Finally, Wife contends that the trial court committed an error of law and abused its discretion by forcing Wife to pay the master's fees and costs if she chose to file exceptions. Wife's Brief at 37-38. The master ordered Husband to pay all fees and costs associated with the master. However, the master also stated that if "Wife filed exceptions, she shall pay the remaining Master's fees and costs of $4,355 and shall be reimbursed by Husband within 30 days of the filing of the Master's Report." Master's Report, at § VII.

Wife did file exceptions and paid the associated costs, but was reimbursed timely by Husband. Thus, the issue is moot, and we will not review it. However, we do point out that based upon the master's finding that "Husband is in a better position to pay the Master's fees and costs[,]" it was inequitable to require Wife to front the costs in the event she filed exceptions. Master's Report, at § VII.

Order affirmed in part and vacated in part. Case remanded to the trial court for entry of an order consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 6/11/2015