J-A19043-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| GARTH AVERY GREGOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LAURA MEGAN GREGOR | : | No. 1641 MDA 2021 |

Appeal from the Order Entered April 21, 2022
In the Court of Common Pleas of Centre County Civil Division at No(s):
17-1750

BEFORE:   BOWES, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED:  OCTOBER 3, 2022**

Appellant, Garth Avery Gregor ("Ex-Husband"), appeals from the order entered April 21, 2022, by the Court of Common Pleas of Centre County providing for the equitable distribution of marital assets of Ex-Husband and Appellee, Laura Megan Gregor ("Ex-Wife").  Upon review, we vacate in part and remand for further proceedings relative to the valuation of the parties' Honda Pilot and how such valuation may affect the trial court's overall equitable distribution scheme.

After presiding over the August 26, 2021, equitable distribution hearing at issue and reviewing each party's submitted proposed findings of fact and conclusions of law, the court issued its November 18, 2021, order and opinion,

_____

[*] Former Justice specially assigned to the Superior Court.

in which it made the following relevant findings of fact and conclusions of law

pursuant to 23 Pa.C.S.A. § 3502(a).[1]

_____

[1] Section 3502(a) sets forth the following relevant factors to be considered by a trial court in making its determination regarding the equitable distribution of a marital estate:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective. (10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

*(Footnote Continued Next Page)*

The parties married on June 27, 1998 in Virginia and Husband [hereinafter "Ex-Husband"] filed the Complaint in Divorce on May 11, 2017. The parties were married for approximately 18 years and 10 months prior to separation. . . . This was the first marriage for both Ex-Husband and Wife [hereinafter Ex-Wife]. . . .

The parties have two daughters, ages 17 and 15[, and at] the time of the hearing, Ex-Husband and Ex-Wife were both 45 years of age. . . . Ex-Husband testified his health is medium. Ex-Wife has a history of depression she has been treating for more than 10 years.

The parties lived a middle-class lifestyle during the marriage. Ex-Husband worked full time in a position where he earned a good salary, and Ex-Wife worked in the home raising the parties' children. Ex-Husband testified there were times they were just scraping by such as when he worked at Alfred University and they lived in upstate New York. Ex-Wife testified they were very comfortable during the marriage, lived in a nice home in a nice neighborhood in Port Matilda, took a vacation once yearly, and contributed to retirement savings in recent years.

Ex-Husband testified he has worked at Penn State University for the past 13 years as an Associate Director for Contracts. His gross income for 2020 was $118,260.00. Ex-Husband testified he makes $9,855.00 monthly, gross. There was no information provided for 2021. Additionally, Ex-Husband bought and sold Lego sets online during the marriage and has received some additional income in this endeavor.

---

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S. § 3502 (a). "The weight to be given to these statutory factors depends on the facts of each case and is within the court's discretion." ***Mercatell v. Mercatell***, 854 A.2d 609, 611 (Pa. Super. 2004) (citation omitted).

Prior [to] the parties' separation, Ex-Wife was a stay at home mother for over 14 years. At separation, she was also working at Penn State University at the Bennett Family Center and was in the process of obtaining a license to work as a clinical social worker. Currently, Ex-Wife is self-employed, full time as a Licensed Clinical Social Worker (LCSW). Ex-Wife's gross annual income is approximately $47,000.00. Additionally, Ex-Wife received spousal support since February 12, 2018 in the amount of $649.40 monthly.

[Regarding the parties' respective vocational skills and employability,] Ex-Husband earned two master's degrees and has worked at Penn State University for 13 years as noted above. Prior to his current position, Ex-Husband was employed at George Mason University in Virginia for about three years and Alfred University in New York for about three years.

Ex-Wife also earned a master's degree in 2002. From 1998 to 2002, she worked for a mental health counselor in a group home for men with schizophrenia and as a job developer for people with disabilities during the time she worked on her master's degree. She worked for about a year after earning the master's degree.

When pregnant with the parties' first child, Ex-Wife was recommended to be on partial bed rest during the pregnancy and stopped working. Ex-Wife testified [that] by mutual agreement[] she was a stay-at-home mom for nearly 15 years. Ex-Wife testified that Ex-Husband would never watch the kids on evenings or weekends. At separation, Ex-Husband did not provide any childcare while Ex-Wife worked and her Mother had to be with the children when Ex-Wife worked. At separation, Ex-Wife obtained a part-time job at the Bennett Center that paid $13 hourly. Ex-Wife pursued education and training after the separation to become a Licensed Clinical Social Worker and is now working as a Licensed Clinical Social Worker.

The parties own the marital estate at 140 Gibson Place in Port Matilda, Pennsylvania subject to a 15 year mortgage in Ex-Husband's name. Ex-Husband believes the residence's value is at least $470,000.00 per his Findings of Fact and Conclusions of Law and his attorney's contention at the hearing. Ex-Husband testified a house in the neighborhood sold two (2) weeks prior to the hearing for $460,000.00, but had less square footage than the

parties' home and lacked a finished basement. Ex-Husband further testified his opinion of the value of the marital residence was based on the sales of other homes in the neighborhood and submitted Zillow print outs regarding other home sales.

Ex-Wife obtained an appraisal of the home from a certified appraiser dated May 10, 2021 which placed the value at $420,000.00. Pursuant to appropriate appraisal standards, Ex-Wife's appraisal takes into account comparable nearby home sales. Ex-Husband disputes Ex-Wife's appraisal arguing the comparable sales were not in their neighborhood, yet Ex-Husband only offers his own opinion regarding the value rather than obtaining an appraisal to submit to the trial court. Ex-Wife stated the comparables were within walking distance and nearby the parties' home. Ex-Husband has no real estate experience or credentials. The trial court accepts the Ex-Wife's value per the appraisal of $420,000.00.

Ex-Wife has paid the mortgage on the residence since March, 2018, which payment is $1,905.49 monthly. The balance was $109, 417.76 as of the August, 2021, mortgage statement.

. . .

Ex-Husband has a Toyota Camry with a stipulated value of $4,250.00. Ex-Wife has a Honda Pilot [with] a stipulated value of $10,000.00.
. . .

Ex-Wife seeks credit for expenses she incurred post separation[. These include, *inter alia*, $10,000 paid to Honda Financial Services to regain possession of the Honda Pilot which was repossessed and $19,894.02 in real estate taxes on the marital residence from 2018-2020.]

The [trial court] determines Ex-Wife should receive credits for fifty (50) percent of the payments she is requesting. . . .

. . .

Both parties have the ability to work full time. Both parties have the opportunity for future income. Ex-Husband asserts he has no opportunity for advancement in his position but will likely received cost of living adjustments to his income. Ex-Wife is working as a

self-employed LCSW and is relatively new to the career. Ex-Wife is the primary custodian of the children and takes care of the oldest daughter's medical needs [for Postural Orthostatic Tachycardia Syndrome] and appointments.

. . .

Ex-Husband provided health insurance benefits through Aetna or Ex-Wife and the children. Ex-Wife will need to obtain her own health insurance and possibly health insurance for the children if Ex-Husband does not maintain the children on his health insurance. Ex-Wife testified for her to obtain health insurance for herself it will cost $359 monthly. If she needs to add her oldest daughter to her health insurance the insurance will cost $900 or $1,000 monthly, with a deductible of $1,600 a month and up.

. . .

Ex-Husband contributed to the marital property by working full-time and Ex-Wife contributed as a stay-at-home parent and homemaker. When Ex-Husband left the marital residence, Ex-Wife assumed responsibility for the mortgage, taxes, and costs associated with the marital residence.

. . .

Ex-Wife wishes to remain living in the marital residence which she hopes will be possible with a distribution of retirement assets and alimony award. Ex-Wife intends to seek refinancing of the mortgage in her name. If Ex-Wife is unable to retain refinancing in her sole name, the marital residence will need to be sold and there will be costs related to the sale and transfer of the property and Ex-Wife asks the costs be borne equally by the parties.
. . .

The court finds an equitable distribution of the [total net] marital assets in this matter to be 55% [$487,693.25] to Ex-Wife and 45% [$399,021.75] to Ex-Husband based on the recitation of the factual findings set forth above including the length of the marriage being nearly nineteen (19) years prior to separation, the middle class standard of living during the marriage, Ex-Wife's contributions as a stay at home mother and home maker for the two children which contributed to the ability of Ex-Husband to

focus on his education and career, and the respective earning capacities and education of the parties.

Trial Court Opinion and Order, 11/18/2021, at 1-19.

In Ex-Husband's timely appeal, he raises the following questions for this Court's consideration:

I. Whether the trial court erred in finding that the value of the marital estate was $420,000.00, accepting the Appellee's appraisal rather than the Appellant's suggestion of value of $470,000.00 where the Appellant presented evidence of comparable residences in the neighborhood.

II. Whether the trial court erred in awarding a fifty percent credit to the Appellee for the Honda Pilot valued at $10,000.00, which was possessed and used solely by Appellee and awarded to the Appellee, in kind, in the court's equitable distribution order.

III. Whether the trial court erred in awarding a fifty percent credit to the Appellee for the property taxes on the marital residence, which was possessed and used solely by the Appellee since separation and awarded to the Appellee, in kind, in the court's equitable distribution order.

Brief for Appellant, at 2.

Our standard of review in assessing the propriety of a marital property distribution is well-settled:

A trial court has broad discretion when fashioning an award of equitable distribution. ***Dalrymple v. Kilishek***, 920 A.2d 1275, 1280 (Pa. Super. 2007). Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is "whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure." ***Smith v. Smith***, 904 A.2d 15, 19 (Pa. Super. 2006) (citation omitted). We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. ***Id***. This Court will not find an "abuse of discretion"

unless the law has been "overridden or misapplied or the judgment exercised" was "manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." *Wang v. Feng*, 888 A.2d 882, 887 (Pa. Super. 2005). In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. *Id*. "[W]e measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." *Schenk v. Schenk*, 880 A.2d 633, 639 (Pa. Super. 2005) (citation omitted).

*Snyder v. Snyder*, 275 A.3d 968, 976 (Pa. Super. 2022) (quoting *Biese v. Biese*, 979 A.2d 892, 895 (Pa. Super. 2009)).

In Ex-Husband's first issue, he argues the trial court abused its discretion when it valued the marital home at $420,000.00 in full adoption of the professional appraisal prepared by Ex-Wife's certified real estate appraiser. Because the trial court had indicated during trial that Ex-Husband's lay testimony provided "comparable" and "relevant" home sales of $460,000 and $470,000, *see* N.T., 8/26/21, at 31, Ex-Husband argues the court should have settled on a higher value to reflect a middle ground between the parties' respective submissions.

Regarding property valuation in equitable distribution cases, this Court has observed that the Divorce Code does not include a specific method of valuing assets, such that the trial court must exercise its discretion, relying upon the estimates and inventories submitted by both parties, the records of purchase prices, and appraisals. *Gaydos v. Gaydos*, 693 A.2d 1368, 1377 (Pa. Super. 1997).

Our jurisprudence recognizes that a property owner may be deemed a valuation expert regarding his or her property, and a court acts within its discretion as finder of fact when it elects to assign equal weights to the valuation testimonies of two equally credible experts and average it out. The trial court is also free, however, to reject even an undisputed expert opinion, although it should offer some explanation of the basis on which it sets value where that value varies from the only value given in evidence. *Semasek v. Semasek*, 502 A.2d 109, 112 (Pa. 1985). In undertaking this task of assessing valuation witnesses, therefore, the court is free to accept all of the testimony, portions of the testimony, or none of the testimony regarding the true and correct value of the property. *Gaydos*, *supra*. *See also Aletto v. Aletto*, 537 A.2d 1383, 1389 (Pa. Super. 1988).

Although our jurisprudence recognizes a property owner may be deemed a valuation expert regarding his or her property, it is clear that in the case *sub judice*, the trial court did not consider Ex-Husband an "equally credible expert" to Ex-Wife's professional appraiser given the different methods by which they arrived at their respective opinions.

In assessing their respective valuation testimonies, the trial court found that Ex-Husband's reliance on recent sales within the neighborhood lacked the comprehensive analysis undertaken by Ex-Wife's professional appraiser, who based her opinion not only on recent sales of three comparable neighboring homes but also on a multi-factorial comparison between the parties' home and each comparable home, consistent with appraisal industry standards, before

arriving at a final appraisal. Indeed, the trial court noted Ex-Husband had not submitted any appraisal of the marital home at all.

Accordingly, as there was an evidentiary basis for the trial court's complete acceptance of Ex-Wife's expert valuation testimony, we find no abuse of discretion on this issue.

In Ex-Husband's second issue, he argues that the trial court erred in awarding a fifty percent credit to Ex-Wife for the $10,000 payment she made to reacquire from repossession the family's Honda Pilot, which under the equitable distribution order is now in her sole possession. Because Ex-Husband had arrived at a stipulated value of $10,000 for the Honda Pilot only by crediting the entire amount of Ex-Wife's payment to recover the car, he maintains, Ex-Wife was effectively awarded a $15,000 credit for what was only a $10,000 expense.

At the equitable distribution hearing, Ex-Husband stipulated that the value of the Honda Pilot was $10,000 after considering Ex-Wife's payment of the repossession fees:

> **[Counsel for Ex-Wife]:** So are you saying – we're in agreement that you'll stipulate that the value of the Honda Pilot is ten thousand [dollars]?
>
> **Ex-Husband**: I'm trying to take into consideration Megan paying the repossession fees so that the car was in her name and there's still value beyond the repossession, so yes.
>
> **[Counsel for Ex-Husband**]: Yes.
>
> **Ex-Husband:** The vehicle's worth twenty thousand or so. Megan paid $10,000 towards it and I think she had me write a thing that said that would be taken into consideration when we

eventually went to court. So, I'm saying twenty thousand less than [sic] the amount that Megan paid is the ten thousand. That's just my best estimate [reached after consulting Kelly Blue Book.]

**[Counsel for Ex-Wife]:** Well, what's the basis for believing it was twenty thousand?

**Ex-Husband:** Just looking at comparable Pilot sales, just like I did with the Camry.

**[Counsel for Ex-Wife]:** Like a Kelly Blue Book value, for example?

**Ex-Husband:** Kelly – yes.

**The Court:** Are we stipulating that it's $10,000?

**[Counsel for Ex-Husband]:** (Indicated affirmatively.)

**[Counsel for Ex-Wife]:** Your Honor, I was just following up because he testified to something outside of that stipulation, so I wanted to explore the reason for that.

**The Court:** Yeah, I don't care because I'm going to go by stipulation. So if he stipulated to ten thousand, that's what I'm going to go by. And that's what the stipulation was. Okay.

N.T., 8/26/21, at 35-36.

This record thus shows that Ex-Husband's stipulated value of the Honda Pilot reflected his concession that Ex-Wife should receive a 100% credit for her $10,000 payment of arrears and repossession fees necessary to reacquire the $20,000 Pilot as marital property and retain it in her name. It is, therefore, unclear why the trial court awarded Ex-Wife an additional $5,000 credit toward her payment of arrears.

To the extent the trial court simply ignored the basis for Ex-Husband's stipulation, assigned a stipulated value of $10,000 without regard for the only valuation testimony relative to the Honda Pilot, and then gave Ex-Wife a 50%

credit for a $10,000 payment that Ex-Husband already conceded should be fully credited against the $20,000 value of the Pilot, we agree with Ex-Husband that the trial court effectively awarded Ex-Wife a $15,000 credit for her $10,000 payment.

We discern from the same excerpted notes of testimony, however, that counsel for Ex-Wife appeared to disagree with the calculations offered in support of Ex-Husband's stipulation, and she had begun to cross-examine him about his $20,000 valuation of the Honda Pilot, when the trial court halted the examination as unnecessary.

Because the record was not allowed to develop fully on this point, it includes neither a stipulated valuation to which both parties truly agreed nor an evidence-based $10,000 valuation other than what was calculated by Ex-Husband, which the trial court ostensibly did not consider. Though mindful of our obligation to consider the distribution scheme as a whole when determining the propriety of an award, we nevertheless find the lack of an evidentiary basis for, or actual stipulation to, this important valuation compels vacating the trial court's order and remanding for the limited purpose of allowing the parties to either agree to a stipulated value of the Honda Pilot after crediting Ex-Wife's $10,000 payment or, in the event such an agreement proves elusive, develop a record that supports a valuation to be made by the trial court.

In Ex-Husband's final issue, he avers the trial court erred when it awarded Wife a 50% credit for payment of real estate taxes owed during her

post-separation, exclusive possession of the marital residence from 2018 through 2020. Brief for Appellant, at 24-26.

The trial court determined that imposing upon the parties equal responsibility for real estate taxes on the family residence from 2018-2020 was necessary to make the total distribution scheme equitable. In reaching this conclusion, the trial court considered pertinent Section 3502(a) factors, including the present income and economic disparity between the parties, Ex-Wife's contributions to the increased earning power of Ex-Husband by agreeing to be a stay-at-home parent and homemaker for most of the marriage, and her continued role as the primary custodian of the parties' two minor children in the home. Although Ex-Wife had exclusive possession of the home during the three years in question, the trial court considered joint responsibility of real estate taxes a necessary part of the overarching equitable distribution scheme.

In contesting the trial court's decision, Ex-Husband cites to authority that is either unsupportive of, or altogether inapposite to, his claim. For example, Ex-Husband cites to *Schneeman v. Schneeman*, 615 A.2d 1369 (Pa. Super. 1992) and its holding that the out-of-possession husband in that case was not entitled to a credit for making post-separation mortgage payments as a matter of right "as long as the total distributory scheme is equitable." *Id.* at 1377.

Ex-Husband appears to imply that *Schneeman* thus prohibits or is inconsistent with equitable distribution awards granting credits for such post-

- 13 -

separation payments, but ***Schneeman*** does not so hold. As the decision makes clear, it simply acknowledges the principle that effectuating an equitable distribution scheme pursuant to both Section 3502(a) and corresponding jurisprudence is paramount, such that post-separation mortgage payment credits may be denied where doing so contributes to or is consistent with the equitable scheme.

The ***Schneeman*** decision, therefore, dovetails with the case-by-case approach espoused by controlling authority. Where, as here, awarding such credits for property tax payments supported the equitable distribution scheme, the proposition recited in ***Schneeman*** is not offended.

Ex-Husband also cites to ***Jayne v. Jayne***, 663 A.2d 169 (Pa. Super. 1995), which held that voluntary payments from one spouse's own resources will not be credited at equitable distribution. The facts of ***Jayne***, however, are inapposite to those in the present matter.

In ***Jayne***, the husband argued he should be given credit for post-separation payments that he voluntarily made to his wife or on his wife's behalf over and above what was required by the spousal support order. We held that his voluntary payment of wife's expenses from his own resources would not be credited at equitable distribution. ***Id.*** at 178. In so holding, we relied on ***Hunsinger v. Hunsinger***, 554 A.2d 89, 95 (Pa. Super. 1989), in which we rejected a husband's claim he should have been allowed a deduction for money voluntarily spent when taking his family on vacation during a period of reconciliation between the parties.

Here, Ex-Wife's payment of real estate taxes on the home occupied by her and the parties' minor children did not constitute voluntary payments to Ex-Husband for which she sought reimbursement. What is at issue here, as noted above, is the trial court's determination that the formation of an equitable distribution scheme promoting economic justice between the parties was achieved, in part, by awarding Wife a 50% credit for the real estate taxes she paid on the family home during the post-separation period. We discern no error with the court's decision in this regard. *Cf Grezak-Sklodowska v. Grezak*, Nos. 2312 and 2313 EDA 2020, (Pa. Super. filed October 22, 2021) (unpublished memorandum) (affirming trial court determination, based on consideration of Section 3502(a) factors, that wife who held exclusive possession of marital residence should receive credit for taxes paid on residence), *reargument denied* (Jan. 3, 2022), *appeal denied*, No. 77 MAL 2022, 2022 WL 2233598 (Pa. June 22, 2022).[2] Accordingly, we reject Ex-Husband's final issue as devoid of merit.

For the foregoing reasons, we vacate the trial court's order and remand this matter for the limited purpose of either allowing the parties to reach agreement on the stipulated value of the Honda Pilot after crediting Ex-Wife's $10,000 payment or, in the alternative, developing a record that supports a valuation to be made by the trial court. What effect, if any, this may have on

_____

[2] Under Pennsylvania Rule of Appellate Procedure 126(b), nonprecedential decisions (referring to unpublished memorandum decisions of the Superior Court) filed after May 1, 2019, may be cited for their persuasive value.

the trial court's equitable distribution scheme is to be determined by the trial court.  In all other respects, we discern no error with the trial court's equitable distribution order.

Order vacated in part.  Case remanded for further proceedings consistent with this decision.  Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/03/2022